DAVID P. TAYLOR *v.* COMMISSIONER OF CORRECTION
(AC 26158)

DiPentima, Gruendel and Dupont, Js.

Argued January 17—officially released April 11, 2006

*Emmet P. Hibson, Jr.*, special public defender, for the appellant (petitioner).

*Melissa Streeto Brechlin*, assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

DUPONT, J. The petitioner, David P. Taylor, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus. The habeas petition was comprised of two claims, either or both of which, he argues, required as relief that he be allowed to with-

draw his *Alford*[1] plea as having been made involuntarily. The petitioner first claims that the trial court, on the basis of the facts known to it at the time of his plea to murder in violation of General Statutes § 53a-54a, should have, sua sponte, ordered a competency hearing pursuant to *Pate* v. *Robinson*, 383 U.S. 375, 385, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), and *State* v. *Watson*, 198 Conn. 598, 605, 504 A.2d 497 (1986).[2] His second claim is that he received ineffective assistance of counsel in connection with his decision to plead guilty, given his mental state at the time of the plea.

The respondent, the commissioner of correction, filed a return to the petition, asserting the procedural

[1] *North Carolina* v. *Alford*, 400 U.S. 25, 35, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] The competency hearing, sought by the petitioner, related to his mental health at the time of his plea, unlike the evaluations of the psychiatrist, psychologist and neurologist obtained by defense counsel that related to his mental health at the time of the murder. There is a distinct difference between the affirmative defense of extreme emotional disturbance, or the affirmative defense of mental defect or disease, as opposed to the due process standard that requires a criminal defendant to be competent to enter a valid guilty plea. Specifically, in order to prevail on a defense of extreme emotional disturbance, the defendant must prove, by a preponderance of the evidence, that "at the time the defendant intentionally caused the death of [another], he acted under the influence of an emotional disturbance . . . that such emotional disturbance was extreme . . . [a]nd . . . that under all of the circumstances as the defendant believed them to be, there was a reasonable explanation or excuse for such extreme emotional disturbance influencing his conduct." (Internal quotation marks omitted.) *State* v. *Person*, 60 Conn. App. 820, 826 n.8, 761 A.2d 269 (2000), cert. denied, 255 Conn. 926, 767 A.2d 100 (2001). On the other hand, "[a]s a matter of constitutional law, it is undisputed that the guilty plea and subsequent conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. Conn. Const., art. I, § 8; U.S. Const., amend. XIV, § 1; see *Pate* v. *Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). . . . This constitutional mandate is codified in our state law by [General Statutes] § 54-56d (a), which provides that [a] defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense." (Internal quotation marks omitted.) *State* v. *Monk*, 88 Conn. App. 543, 548–49, 869 A.2d 1281 (2005).

default of the petitioner in not raising these issues by direct appeal or by filing a motion to withdraw his plea before sentencing.[3] The respondent argues that a procedural default would require a demonstration of cause and prejudice, as established for federal habeas proceedings by *Wainwright* v. *Sykes*, 433 U.S. 72, 90–91, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), and adopted by our Supreme Court for state habeas proceedings in *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 409, 589 A.2d 1214 (1991), prior to any review by the habeas court in this case. In his reply, the petitioner denied this defense. The court, in its memorandum of decision, did not discuss cause and prejudice or the need for the trial court to order a competency hearing. We hold that the court properly denied the petition for certification to appeal to challenge the court's denial of the petitioner's claim of ineffective assistance of counsel, but we remand the matter to the habeas court as to the petitioner's *Pate* claim in order to obtain the court's finding as to whether cause and prejudice existed.

The facts of this case are tragic for everyone involved. In 1994, the petitioner, his then wife of fifteen years and two children resided in England, where the petitioner was employed as a production engineer for Thermatool Corporation (Thermatool), a United States company. In February, 1995, the petitioner's wife announced that she wanted a divorce. The divorce had been precipitated by his wife's extramarital affair. The petitioner gained full custody of their children during the pendency of the divorce. Shortly after being awarded custody, the petitioner hired the victim, Milena Pitkova, as an au pair, to help him care for the children. Some time after his divorce, the petitioner became romantically involved with the victim.

In the summer of 1996, Thermatool offered the petitioner a job in the United States. His divorce became official in

---

[3] Practice Book § 23-30 (b) provides in relevant part: "The return [to the petition] shall respond to the allegations of the petition and shall allege any facts in support of any claim of procedural default . . . ." An ineffective assistance of counsel claim is not subject to the usual rule requiring a direct appeal and is properly raised by way of a subsequent habeas corpus petition.

May, 1997, and by June, 1997, the petitioner, his two children and the victim relocated to Michigan for his new position at Thermatool. In May, 1998, Thermatool closed its Michigan operations and offered the petitioner a job at Thermatool headquarters in East Haven. By August, 1998, the petitioner, his children and the victim were living in Madison. To earn some extra money and keep busy while the petitioner was at work and the children were at school, the victim took a part-time job at a local coffee shop.

In December, 1998, the petitioner asked the victim to marry him, and she accepted. They planned a wedding and obtained a marriage license. In a few short weeks, however, the victim asked to postpone the marriage. In February, 1999, the victim informed the petitioner that she wanted to end their romantic and professional relationships. The victim gave the petitioner one month's notice to find a new au pair for the children. The victim's decision triggered the same feelings of shock, depression, loneliness and despair that the defendant had felt when his wife left him exactly four years earlier.

On Sunday, March 28, 1999, the victim informed the petitioner that she had become romantically involved with a gentleman she had met while working at the local coffee shop. In a fit of anger, the petitioner threw the victim's clothes down the stairs of the house and told her to call her boyfriend to come and collect her. The next day, the victim agreed to return to the petitioner's house to cook the family a meal and to gather the rest of her belongings. That evening, after learning of the intimate details of the victim's new relationship, the petitioner struck the victim in the head with a hammer. After checking that the victim had no pulse, the petitioner moved her body to the basement. The petitioner then called 911, told the operator what he had done and asked for the police to come and take him into custody. The petitioner then was taken into custody and charged with murder in violation of § 53a-54a.

*State* v. *Leecan*, 198 Conn. 517, 541–42, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986).

The court appointed counsel from the office of the public defender.[4] Counsel for the petitioner immediately began to investigate whether the petitioner had any viable mental health defenses to the charge. Specifically, counsel hired a psychiatrist to evaluate the petitioner and to review his department of correction medical records. Counsel also viewed the crime scene, interviewed the petitioner's employer and coworkers, and traveled to England to interview the petitioner's former wife, family and friends. Prior to the trial date, counsel met with the petitioner in the correctional facility in which he was being held. Between arrest and trial, the petitioner was confined continuously in the mental health unit of the correctional facility in which he was being detained. Throughout the two and one-half years during which he was represented by counsel, the petitioner had numerous opportunities to communicate with counsel via mail and telephone. Because it did not appear that the state would agree to allow the petitioner to plead to a lesser offense, the petitioner and counsel prepared to proceed to trial. During the summer of 2001, the state discussed an offer with defense counsel under which the petitioner would plead guilty to murder and receive the mandatory minimum sentence. At that point, the petitioner did not want to plead guilty to murder.

On September 12, 2001, the day trial was scheduled to begin, the petitioner pleaded guilty, under the *Alford* doctrine, to one count of murder in violation of § 53a-54a.[5] After canvassing the petitioner, the trial court found that his plea was made in a knowing, intelligent and voluntary manner. As such, the court accepted the plea and entered a finding of guilty. On November 30, 2001, the court sentenced the petitioner, in accordance with the plea agreement, to twenty-five years to serve in prison.

[4] Consistent with the policy of the office of the public defender in cases where a defendant is charged with murder, cocounsel was assigned. His counsel were attorneys Mary M. Haselkamp and Beth A. Merkin.

[5] Prior to entering the courtroom, the petitioner and counsel discussed the earlier plea offer, and the petitioner, changing his mind, expressed his intent to accept the offer.

As a preliminary matter, we identify the relevant legal principles and the applicable standard of review that guide our resolution of the petitioner's appeal. The denial of a petition for certification to appeal is initially reviewed to determine whether the habeas court abused its discretion. A conclusion that its discretion has been abused requires a showing that the particular claim "involves issues that . . . are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Faust* v. *Commissioner of Correction*, 85 Conn. App. 719, 721, 858 A.2d 853, cert. denied, 272 Conn. 909, 863 A.2d 701 (2004); see also *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994).[6] If a habeas court is found to have abused its discretion, then an appellate court may review the rectitude of the denial of the writ of habeas corpus. See *Faust* v. *Commissioner of Correction*, supra, 721. Therefore, before we may reach the merits of the petitioner's claim that the court improperly decided the issues raised in his petition for a writ of habeas corpus, he first must show that the court abused its discretion in denying the petition for certification to appeal. See *Sadler* v. *Commissioner of Correction*, 90 Conn. App. 702, 703, 880 A.2d 902, cert. denied, 276 Conn. 902, 884 A.2d 1025 (2005).

I

## INEFFECTIVE ASSISTANCE OF COUNSEL

We first address whether the habeas court abused its discretion in denying the petition for certification to appeal with respect to the petitioner's claim that he received ineffective assistance of counsel. According to the petitioner, his attorneys knew the specific medications, as well as the dosages, that he was being prescribed, were aware that he was being treated for mental health issues by psychiatrists and psychologists from the department of correction, believed that he had a viable defense

---

[6] *Simms*, like this case, involved two discrete bases for the writ. In *Simms*, the petitioner claimed that the trial judge should have recused himself

for extreme emotional disturbance and knew he was being held in psychiatric units of the department of correction institutions. The petitioner asserts that, despite having this information, his attorneys failed to bring it to the attention of the court, thereby preventing the court from determining whether a competency hearing was necessary. The petitioner claims that, in failing to provide the court with this information, his attorneys' conduct fell below the objective standard of reasonableness because they failed to protect his constitutional rights. We disagree.

The habeas court found that the petitioner's attorneys prepared adequately to represent him at trial. According to the court, the attorneys went to great lengths to prepare a defense of extreme emotional disturbance by having the petitioner evaluated by a psychiatrist, a psychologist and a neurologist. The court reviewed the psychologist's report, as well as the department of correction's medical records. Further, the court found that the attorneys explained the definition of an *Alford* plea and the ramifications of the plea to the defendant. The court heard testimony from one of the petitioner's attorneys. The attorney stated that, although she prepared the extreme emotional disturbance defense and was aware that the petitioner was being held in mental health units in the department of correction's institutions, as well as the fact that he was being prescribed medications for his mental health issues, she believed that none of this affected the petitioner's ability to plead guilty and to understand the nature of the proceedings. On the basis of this evidence, the court found that there was no basis on which it could conclude that the attorneys' conduct fell below the objective standard of reasonableness. On the basis of those determinations, the court denied the petition for a writ of habeas corpus. Thereafter, the court denied the petition for certification to appeal, concluding that the petition was without merit.

because of prior judicial contacts with the petitioner and that the petitioner had received ineffective assistance for counsel's failure to pursue the recusal issue. *Simms* v. *Warden*, supra, 230 Conn. 611.

As previously stated, "[f]aced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, [supra, 230 Conn. 612]. First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"We examine the petitioner's underlying claim of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . .

Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Citations omitted; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 423–25, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005). "For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong. . . . To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Hernandez* v. *Commissioner of Correction*, 82 Conn. App. 701, 706, 846 A.2d 889 (2004).

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation

marks omitted.) *Santiago* v. *Commissioner of Correction,* supra, 90 Conn. App. 425.

Both the trial transcript and the habeas transcript reveal that the petitioner's counsel believed that he understood the proceeding at which he pleaded guilty and was mentally capable of pleading guilty. Furthermore, the trial transcript indicates that the trial court was well aware of the petitioner's extreme emotional disturbance defense and that he was being prescribed medication. Although the petitioner asserts that his counsel should have requested a competency hearing or alerted the trial court to his mental health issues, there is no evidence in the record on which a court could conclude that counsel's performance fell below the objective standard of reasonableness imposed by *Strickland.* Our review of the petitioner's claim of ineffective assistance of counsel leads us to conclude that he has not demonstrated that the issue is debatable among jurists of reason, that a court could resolve the issue differently or that the issue deserves encouragement to proceed further. We therefore conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal on this issue.

II

VALIDITY OF GUILTY PLEA

Next, we address the petitioner's claim that the trial court, on the basis of the facts known to it at the time that the petitioner pleaded guilty, should have, sua sponte, ordered a competency hearing pursuant to *Pate* v. *Robinson,* supra, 383 U.S. 385, and *State* v. *Watson,* supra, 198 Conn. 605.[7] The respondent claims that the petitioner's procedural default in not filing a motion to withdraw his plea prior to sentencing or filing a direct appeal to raise the issue

[7] The respondent claims that the issue of competency was never raised by the petitioner in his habeas petition or at the habeas trial, precluding this court from addressing that claim on appeal. The petition for a writ of habeas corpus consists of a form provided by the department of correction and filled in by the petitioner without the assistance of counsel. On question five of the form, under the category of "this petition claims that my conviction was illegal because (a) guilty plea was not voluntary," the petitioner wrote "yes, on lawyer's advice." We read this allegation, along with the petitioner's

of his competency precludes him from raising the issue by way of a petition for a writ of habeas corpus.

As with the petitioner's ineffective assistance of counsel claim, we first must address whether the habeas court abused its discretion in denying certification to appeal. In determining whether the habeas court abused its discretion, we must examine the petitioner's underlying claim. This is so because in order to establish an abuse of discretion, it must be demonstrated that the issues raised are debatable among jurists of reason, could be resolved in a different manner or deserve encouragement to proceed further.

The petitioner's principal, substantive claim is that the habeas court abused its discretion when it denied the petition for a writ of habeas corpus, rejecting his claim that his guilty plea was not knowing, voluntary and intelligent. In support of his claim, the petitioner makes two subordinate claims. First, the petitioner claims that there was substantial evidence of mental impairment, requiring the trial court to undertake an independent judicial inquiry into his competency to plead guilty. In support of his claim, the petitioner asserts that substantial evidence of mental

response to question 5 (e) of the form petition, to encompass his claim of ineffective assistance of counsel. On question five of the form, under the category of "this petition claims that my conviction was illegal because: (g) mental state at plea or trial was," the petitioner wrote, "on heavy medication, unable to think logically or rationally." We read this allegation to encompass a claim regarding the petitioner's competency to plead.

Furthermore, during direct examination of the petitioner's trial counsel, the petitioner's habeas counsel raised questions regarding the petitioner's competency to plead. Counsel for the respondent also cross-examined the petitioner's trial counsel regarding the petitioner's competency to plead. During counsel's brief argument at the close of the habeas trial, he stated: "I would submit to Your Honor . . . that at the time that he entered into the plea, that he was under the influence of these medications that affected his ability to understand what he was doing. . . . [H]e believes at this point that—that he should not have [been] permitted to enter into a plea under the conditions that he did enter into that plea and based on that I would ask—I would ask Your Honor to grant his petition." The "conditions" under which the petitioner entered his plea include (1) being under the influence of prescription medications and (2) having minimal exploration by the trial court into the effects of those medications on his ability to plead. Although there is no citation to *Pate*, the principle is embodied in the petition filed by the petitioner, the evidence adduced at the habeas trial and the closing argument presented by counsel. We, therefore, conclude that his claim on appeal is reviewable.

impairment exists as a result of the following facts: (1) he was taking four separate medications for mental health issues; (2) his responses regarding whether he was taking medication were inconsistent; (3) he was being held in psychiatric units of the department of correction; (4) he stood accused of a crime that indicated irrational behavior and (5) he filed notice of a defense putting his mental health in issue. Second, the petitioner argues that even though the trial court conducted the standard plea colloquy, it was insufficient to establish that he made a knowing, voluntary and intelligent plea.[8] The petitioner asserts that the colloquy was insufficient because the trial court failed to determine what medication he was taking, the dosage of the medication or the effect the medication had on his ability to enter a knowing, voluntary and intelligent plea.

In her return to the petition for a writ of habeas corpus, the respondent raised as affirmative defenses that the petitioner's claims were in procedural default because he had failed to file a motion to withdraw his plea prior to sentencing, pursuant to Practice Book § 39-26, and did not file a direct appeal. In the return, the respondent further alleged

---

[8] The transcript reveals the following colloquy regarding the petitioner's prescribed medication and his competency:

"The Court: As you stand before the court right now, are you under the influence of any drugs, alcohol or medication, any substance at all?

"[The Petitioner]: No, I am not.

"The Court: There is no medication or anything that would affect your ability to understand the proceedings?

"[The Petitioner]: I am under medication.

"The Court: For the record, what is the medication?

"[The Petitioner]: Prozac, and I think there is another one. I just can't remember.

"The Court: Do you understand what you are doing today?

"[The Petitioner]: Yes.

"The Court: The medication is not affecting your ability to understand what you are doing today?

"[The Petitioner]: No.

"The Court: Do you understand the nature of this proceeding?

"[The Petitioner]: Yes.

"The Court: Attorney Merkin, do you believe the [petitioner] understands the nature of this proceeding?

"[The Petitioner's Counsel Merkin]: Yes.

"The Court: Ms. Haselkamp?

"[The Petitioner's Counsel Haselkamp]: Yes.

"[The Petitioner's Counsel Merkin]: I think that the record should reflect that throughout the time of our representation, he has been on medication for most of the time, and there has been no difficulty communicating with him throughout these proceedings.

"The Court: There has been no difficulty communicating with him throughout the proceedings?

"[The Petitioner's Counsel Merkin]: No.

that the petitioner had failed to show cause and prejudice pursuant to *Wainwright*. The respondent claimed that in order for the habeas court to review the petitioner's claim, the petitioner first would have to demonstrate cause and prejudice, as required by *Wainwright*. The respondent again raised the issue of procedural default in her brief filed with this court, claiming that the petitioner had failed to plead properly any facts or to assert any cause and prejudice that would permit review. The respondent claims that the petitioner did no more than deny that a procedural default existed. According to the respondent, the petitioner's failure to plead any facts or to assert any cause and prejudice in his reply to the return relieved the habeas court of its burden to make findings of cause and prejudice.[9]

In his reply to the return, the petitioner denied the allegations of the defenses in the respondent's return, but did not allege "any facts and assert any cause and prejudice claimed to permit review . . . despite any claimed procedural default," as provided in Practice Book § 23-31 (c). The respondent argues that without more than a denial of the defenses, the petitioner could not raise the constitutional issues involved in his claim that he should be allowed to withdraw his plea. An application for a writ of habeas corpus is a pleading in the nature of a complaint, and the return is in the nature of an answer. *Aray* v. *Warden*, 187 Conn. 324, 332, 445 A.2d 916 (1982). We, thus, treat the petition, return and reply as we would other civil pleadings. We are mindful of the principle that pleadings should be construed "broadly and realistically, rather than narrowly and technically. . . . [A pleading] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) *Gil* v. *Gil*, 94 Conn. App. 306, 313, 892 A.2d 318 (2006).

"The Court: Nor for him to understand what is going on?

"[The Petitioner's Counsel Merkin]: No."

[9] The petitioner, in his reply brief, asserts that the cause and prejudice standard was met.

As previously stated, the defenses of the respondent were two. The first was that the petitioner was in procedural default, and the second was that the petitioner had not shown any cause and prejudice to excuse the default. The defenses themselves injected the issue into the habeas trial, and the habeas court allowed the petitioner to introduce evidence that relates to the failure of the petitioner to move to withdraw his plea or to seek a direct appeal from the judgment that followed his sentencing hearing. As a result, the issue of cause and prejudice was properly before the court.

The validity of a guilty plea can be challenged before sentencing pursuant to Practice Book § 39-26 and on direct appeal. See *Bowers* v. *Commissioner of Correction*, 33 Conn. App. 449, 450–51, 636 A.2d 388, cert. denied, 228 Conn. 929, 640 A.2d 115 (1994). Here, the petitioner failed to raise his claim regarding the validity of his guilty plea before sentencing or on direct appeal. The petitioner raised the claim for the first time before the habeas court. In habeas proceedings, the appropriate standard for review-ability of a constitutional claim not raised before sentencing or on direct appeal is the *Wainwright* cause and prejudice standard. *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 133–34, 136, 629 A.2d 413 (1993). "The petitioner must show good cause for his failure to preserve a claim at trial and actual prejudice resulting from the alleged consti-tutional violation." *Daniels* v. *Warden*, 28 Conn. App. 64, 71, 609 A.2d 1052, cert. denied, 223 Conn. 924, 614 A.2d 820 (1992). Here, the habeas court made no finding regarding whether the petitioner had met his burden of establishing cause and prejudice.

This court is permitted to review the record to determine whether any evidence of cause and prejudice was provided by the petitioner. See *Giannotti* v. *Warden*, 26 Conn. App. 125, 128, 599 A.2d 26 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). "Where . . . there has been evidence presented on the issues of cause and prejudice and the habeas court does not make a finding on the record that

the petitioner has either met or failed to meet his burden of establishing cause and prejudice, we will not review the inadequately preserved constitutional claim on the merits. Rather, we will remand the case to the habeas court for it to determine whether the petitioner has satisfied his burden of establishing cause and prejudice." *Daniels* v. *Warden*, supra, 28 Conn. App. 72; see also, e.g., *Jackson* v. *Commissioner of Correction*, supra, 227 Conn. 127–28. As our Supreme Court noted in *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 419, it is the duty of the habeas court to make such a determination.

Our review of the record reveals that the petitioner presented some evidence to the habeas court regarding his failure to raise this issue before sentencing or on direct appeal and the alleged prejudice arising therefrom. Throughout the proceedings, the petitioner was held in mental health units of the department of correction's facilities. The petitioner's medical records for the eight month period leading to his guilty plea indicate that he had suicidal ideations. The petitioner initially rejected the prosecution's offer of a plea bargain. Counsel testified that the petitioner previously had decided to proceed to trial because "his feeling was that he did not intentionally murder [the victim]."

Immediately following his arrest and incarceration, the petitioner was prescribed various dosages and combinations of Remeron, Ritalin, Prozac, Zyprexa, Zoloft and Cogentin. According to both the petitioner and his counsel, his emotional state fluctuated throughout the proceedings. According to counsel, the petitioner was distraught at their first meeting. At times, he clearly was depressed, but his demeanor was much more calm or level as time elapsed. Nevertheless, he was very emotional at sentencing. On the day that he accepted the plea arrangement, the petitioner, by his own account, was anxious and overwhelmed by everything.

The petitioner, off medication by the time of the habeas hearing, described a newfound ability to understand the

proceedings more clearly.[10] He also testified that, with a clear mind, he was capable of understanding how clouded his judgment was at the time of his plea. It is undisputed that had the petitioner not pleaded guilty, counsel would have presented an extreme emotional disturbance defense, attempting to prove a mitigating circumstance reducing the charge of murder to manslaughter in the first degree. The viability of the defense is evident in the trial court's remarks that the crime was committed in a monumental rage, which, according to the habeas court, might warrant a manslaughter conviction. Had the petitioner prevailed, his sentence would have been less than the twenty-five years that he received under the plea agreement.

Evidence was presented on the issues of cause and prejudice, but the habeas court did not make a finding on the record that the petitioner had either met or failed to meet his burden of establishing cause and prejudice. We therefore cannot complete our examination of the petitioner's underlying claim to determine whether the habeas court abused its discretion in denying the petition for cetification to appeal. Rather, we must remand the case to the habeas court for the determination of whether the petitioner has satisfied his burden of establishing cause and prejudice. See *Daniels* v. *Warden*, supra, 28 Conn. App. 72.

The appeal is dismissed with respect to the petitioner's ineffective assistance of counsel claim; the case is remanded to the habeas court for a finding of whether cause and prejudice existed for the procedural default on the petitioner's claim that the trial court, sua sponte, should have ordered a competency hearing pursuant to *Pate* v. *Robinson*, supra, 383 U.S. 378, and we retain jurisdiction until the finding has been made.

In this opinion the other judges concurred.

___

[10] The petitioner entered his plea on September 14, 2001, and the court sentenced him on November 30, 2001. On January 31, 2002, the petitioner sent a letter to his trial attorney indicating his present desire to withdraw his plea. Pursuant to Practice Book § 63-1, the petitioner was required to file a direct appeal within twenty days of the date notice of the judgment was given.