# DAVID TAYLOR *v.* COMMISSIONER OF CORRECTION
## (AC 33283)

Gruendel, Espinosa and West, Js.

Argued March 12—officially released July 24, 2012

*David Taylor*, pro se, the appellant (plaintiff).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (state).

*Opinion*

ESPINOSA, J. The plaintiff, David Taylor, who presently is incarcerated in this state, appeals from the judgment of the trial court dismissing his petition for a declaratory judgment ordering that the defendant, the commissioner of correction, grant the plaintiff's request to serve the remainder of his prison sentence in the United Kingdom. The plaintiff claims that the court improperly determined that he was not aggrieved by the defendant's decision not to grant his request for a transfer to the United Kingdom and therefore lacked standing to bring the present action. We affirm the judgment of the trial court.

The following undisputed facts are relevant to our consideration of this appeal. The plaintiff, a citizen of the United Kingdom, presently is serving a mandatory minimum twenty-five year sentence in connection with his conviction for the murder of his girlfriend.[1] He is incarcerated in this state. Since 2001, the plaintiff has made several requests to the defendant for a transfer to the United Kingdom. The plaintiff made his latest request in 2007. The defendant denied this request in a letter dated April 30, 2009, citing as the grounds for its denial the seriousness of the crime of which the plaintiff was convicted, the length of the plaintiff's sentence, the time remaining on the plaintiff's sentence, the disparity between the administration of the plaintiff's sentence in Connecticut and the United Kingdom and

---

[1] The facts underlying the plaintiff's criminal conviction are set forth fully in this court's opinion in *Taylor* v. *Commissioner of Correction*, 94 Conn. App. 772, 775–76, 895 A.2d 246 (2006), rev'd in part, 284 Conn. 433, 936 A.2d 611 (2007).

the potential impact that granting the request would have on the victim's family.

On April 13, 2010, the plaintiff filed his complaint requesting a declaratory judgment ordering that the defendant transfer him to serve the remainder of his sentence in the United Kingdom. Citing General Statutes § 18-91a, 18 U.S.C. § 4100 et seq. and the Convention on the Transfer of Sentenced Persons, March 21, 1983, 35 U.S.T. 2867, 1496 U.N.T.S. 92 (treaty), the plaintiff asserted that the defendant had imposed arbitrary conditions on his transfer in violation of state, federal and international law.

On May 14, 2010, the defendant filed a motion to dismiss. The defendant argued that the plaintiff had failed to allege a violation of any right guaranteed to him by state or federal law.[2] On February 10, 2011, the court granted the defendant's motion. The court determined that the plaintiff was not legally injured or aggrieved by the defendant's decision not to transfer him to the United Kingdom and, accordingly, it held that he lacked standing to maintain the action. The plaintiff filed the present appeal on March 21, 2011.

The plaintiff claims that the court improperly determined that he was not aggrieved by the defendant's decision not to grant his request for a transfer and therefore lacked standing to bring the present action. He argues that he is both classically and statutorily aggrieved in that he has a personal and protectable interest in being transferred to his country of citizenship. Although § 18-91a provides that the defendant "may" consent to the international transfer of a prisoner, the plaintiff maintains that the statute does not

[2] Additionally, the defendant alleged that the plaintiff's action was barred by the doctrine of sovereign immunity. Although the defendant renews this argument on appeal, we need not reach it in light of our conclusion that the court's dismissal of the action on standing grounds was proper.

confer on the defendant unlimited discretion to grant or to deny requests for such transfers. He argues that the legislative history of § 18-91a reveals that the legislature intended to comply fully with the terms of the treaty and that the defendant's refusal to grant his transfer is inconsistent with the treaty and, by extension, the legislative intent underlying § 18-91a. We are not persuaded.

"[S]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [party's] decision has specially and injuriously affected that specific personal or legal interest. . . . Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest. . . . Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Citations

omitted; internal quotation marks omitted.) *Canty* v. *Otto*, 304 Conn. 546, 556–57, 41 A.3d 280 (2012).

Section 18-91a (a) provides: "If a treaty between the United States and a foreign country provides for the transfer or exchange of convicted offenders to the country of which they are citizens or nationals, the Commissioner of Correction may, on behalf of the state and subject to the terms of the treaty, consent to the transfer or exchange of offenders and take any other action necessary to initiate the participation of the state in the treaty. No offender shall be transferred or exchanged under this section unless he consents to such transfer or exchange."

We agree with the court that the plaintiff has failed to demonstrate that he was aggrieved by the defendant's decision to deny his request for a transfer and that, accordingly, the plaintiff lacked standing to bring the present action. First, we conclude that the plaintiff has failed to demonstrate that he was statutorily aggrieved by the defendant's decision. "In order to determine whether a party has standing to make a claim under a statute, a court must determine the interests and the parties that the statute was designed to protect. . . . Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 65, 946 A.2d 862 (2008). Accordingly, whether § 18-91a provides for statutory aggrievement is a question of statutory interpretation. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case." (Internal quotation marks omitted.) *Brouillard* v. *Connecticut Siting*

*Council,* 133 Conn. App. 851, 855, 38 A.3d 174, cert. denied, 304 Conn. 923, 41 A.3d 662 (2012). General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

On the basis of the clear and unambiguous language of the statute, we conclude that § 18-91a does not confer standing on the plaintiff on the basis of statutory aggrievement. Section 18-91a does not provide for judicial review of the defendant's decision not to grant the plaintiff's request to be transferred. There is no language within the statute that could be construed as granting persons in the plaintiff's position a right to judicial relief. Accordingly, the plaintiff has failed to demonstrate statutory aggrievement. Therefore, to have standing, the plaintiff must demonstrate classical aggrievement.

We conclude that the plaintiff has failed to demonstrate that he was classically aggrieved. As the court found, the plaintiff has not identified any legally protected interest that the defendant's decision has specially and injuriously affected. See *Brouillard* v. *Connecticut Siting Council,* supra, 133 Conn. App. 854. The plaintiff asserts that § 18-91a recognizes that he has such an interest in being transferred to the United Kingdom[3] and that the defendant's refusal to allow for this transfer has caused him injury. We are not persuaded. Our Supreme Court has noted that there is no

---

[3] The plaintiff does not argue that the treaty itself affords him such an interest. Rather, the plaintiff discusses the treaty as a part of his review of the legislative history underlying the enactment of § 18-91a. His claim is based on the rights afforded by § 18-91a.

constitutional right to a transfer or to serve a prison sentence in any particular location. See *Asherman* v. *Meachum*, 213 Conn. 38, 47, 566 A.2d 663 (1989) ("a prisoner's transfer from one place of confinement to another does not infringe or implicate a constitutionally protected liberty interest"). Section 18-91a plainly does not establish such a right, vesting in the defendant the discretion to decide whether to grant a transfer.[4] The plaintiff fails to demonstrate how his personal feeling of aggrievement at being denied a transfer rises to the level of aggrievement of a legally protected interest. See *Albuquerque* v. *State Employees Retirement Commission*, 124 Conn. App. 866, 876 n.8, 10 A.3d 38 (2010), cert. denied, 299 Conn. 924, 11 A.3d 150 (2011). Accordingly, because the plaintiff has failed to identify a legally protected interest that has been specially and injuriously affected, we conclude that he lacks standing to bring the present action.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] Citing *State ex rel. Markley* v. *Bartlett*, 130 Conn. 88, 32 A.2d 58 (1943), the plaintiff argues that the word "may" in § 18-91a should be construed to mean "shall." We disagree. "[A]s opposed to [d]efinitive words, such as must or shall, [which] ordinarily express legislative mandates of a nondirectory nature . . . the word *may* imports permissive conduct and the conferral of discretion. . . . Only when the context of legislation permits such interpretation and if the interpretation is necessary to make a legislative enactment effective to carry out its purposes, should the word *may* be interpreted as mandatory rather than directory." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Bletsch*, 281 Conn. 5, 17–18, 912 A.2d 992 (2007). Having determined that the text of the statute is clear and unambiguous, we conclude that the word "may" in § 18-91a should not be interpreted as being mandatory rather than permissive in nature. See General Statutes § 1-2z.