DAVID P. TAYLOR *v.* COMMISSIONER OF CORRECTION
(SC 17749)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued April 9—officially released November 20, 2007

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellant (respondent).

*Emmet P. Hibson, Jr.*, special public defender, for the appellee (petitioner).

*Opinion*

PALMER, J. The dispositive issue in this certified appeal is whether the Appellate Court properly remanded the case to the habeas court for further factual findings. The petitioner, David P. Taylor, filed a petition for a writ of habeas corpus claiming that he was entitled to withdraw his plea of guilty to the crime of murder because the plea was not knowing and voluntary. The habeas court dismissed the petition and denied the petitioner's request for certification to

appeal pursuant to General Statutes § 52-470 (b).[1] The petitioner appealed to the Appellate Court following the denial of his petition for certification to appeal from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. The petitioner claimed, first, that the habeas court had abused its discretion in denying his request for certification to appeal and, second, that the habeas court improperly had concluded that he was not entitled to withdraw his plea. The Appellate Court did not reach the merits of the petitioner's claims but, rather, remanded the case to the habeas court for a finding of whether cause and prejudice existed to excuse the petitioner's procedural default in having failed to file a motion to withdraw his guilty plea before sentencing in accordance with Practice Book § 39-26[2] or to challenge the validity of his plea on direct appeal. *Taylor* v. *Commissioner of Correction*, 94 Conn. App. 772, 778–88, 895 A.2d 246 (2006). We granted the petition for certification of the respondent, the commissioner of correction, limited to

---

[1] General Statutes § 52-470 (b) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

[2] Practice Book § 39-26 provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed."

Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows . . .

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . . ."

the following issue: "Did the Appellate Court properly remand the case to the habeas court for a finding of whether cause and prejudice existed for the petitioner's procedural default?" *Taylor* v. *Commissioner of Correction*, 280 Conn. 926, 926–27, 909 A.2d 524 (2006). We conclude that a remand to the habeas court for a finding on the issue of cause and prejudice is unnecessary because, irrespective of whether cause and prejudice existed for the petitioner's procedural default, the petitioner has failed to demonstrate that the habeas court abused its discretion in denying the petition for certification to appeal. We therefore answer the certified question in the negative and, accordingly, reverse the judgment of the Appellate Court in part.

The opinion of the Appellate Court sets forth the following undisputed facts and procedural history. "In 1994, the petitioner, his then wife of fifteen years and two children resided in England, where the petitioner was employed as a production engineer for Thermatool Corporation (Thermatool), a United States company. In February, 1995, the petitioner's wife announced that she wanted a divorce. The divorce had been precipitated by his wife's extramarital affair. The petitioner gained full custody of their children during the pendency of the divorce. Shortly after being awarded custody, the petitioner hired the victim, Milena Pitkova, as an au pair, to help him care for the children. Some time after his divorce, the petitioner became romantically involved with the victim.

"In the summer of 1996, Thermatool offered the petitioner a job in the United States. His divorce became official in May, 1997, and by June, 1997, the petitioner, his two children and the victim relocated to Michigan for his new position at Thermatool. In May, 1998, Thermatool closed its Michigan operations and offered the petitioner a job at Thermatool headquarters in East Haven. By August, 1998, the petitioner, his children and

the victim were living in Madison. To earn some extra money and keep busy while the petitioner was at work and the children were at school, the victim took a part-time job at a local coffee shop.

"In December, 1998, the petitioner asked the victim to marry him, and she accepted. They planned a wedding and obtained a marriage license. In a few short weeks, however, the victim asked to postpone the marriage. In February, 1999, the victim informed the petitioner that she wanted to end their romantic and professional relationships. The victim gave the petitioner one month's notice to find a new au pair for the children. The victim's decision triggered the same feelings of shock, depression, loneliness and despair that the defendant had felt when his wife left him exactly four years earlier.

"On Sunday, March 28, 1999, the victim informed the petitioner that she had become romantically involved with a gentleman she had met while working at the local coffee shop. In a fit of anger, the petitioner threw the victim's clothes down the stairs of the house and told her to call her boyfriend to come and collect her. The next day, the victim agreed to return to the petitioner's house to cook the family a meal and to gather the rest of her belongings. That evening, after learning of the intimate details of the victim's new relationship, the petitioner struck the victim in the head with a hammer. After checking that the victim had no pulse, the petitioner moved her body to the basement. The petitioner then called 911, told the operator what he had done and asked for the police to come and take him into custody. The petitioner then was taken into custody and charged with murder in violation of [General Statutes] § 53a-54.

"The court appointed counsel from the office of the public defender.[3] Counsel for the petitioner immediately began to investigate whether the petitioner had any viable mental health defenses to the charge. Specifically, counsel hired a psychiatrist to evaluate the petitioner and to review his department of correction medical records. Counsel also viewed the crime scene, interviewed the petitioner's employer and coworkers, and traveled to England to interview the petitioner's former wife, family and friends. Prior to the trial date, counsel met with the petitioner in the correctional facility in which he was being held. Between arrest and trial, the petitioner was confined continuously in the mental health unit of the correctional facility in which he was being detained. Throughout the two and one-half years during which he was represented by counsel, the petitioner had numerous opportunities to communicate with counsel via mail and telephone. Because it did not appear that the state would agree to allow the petitioner to plead to a lesser offense, the petitioner and counsel prepared to proceed to trial. During the summer of 2001, the state discussed an offer with defense counsel under which the petitioner would plead guilty to murder and receive the mandatory minimum sentence. At that point, the petitioner did not want to plead guilty to murder.

"On September 12, 2001, the day trial was scheduled to begin, the petitioner [changed his mind and] pleaded guilty, under the *Alford* doctrine,[4] to one count of mur-

---

[3] In accordance with the policy of the public defender's office in murder cases, the petitioner was represented by two attorneys from that office.

[4] "A defendant may enter an *Alford* plea in the face of strong evidence of factual guilt without admitting guilt to the charged crime. See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) ('[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime')." *State* v. *James G.*, 268 Conn. 382, 388 n.12, 844 A.2d 810 (2004).

der in violation of § 53a-54a. After canvassing the petitioner, the trial court found that his plea was made in a knowing, intelligent and voluntary manner. As such, the court accepted the plea and entered a finding of guilty. On November 30, 2001, the court sentenced the petitioner, in accordance with the plea agreement, to twenty-five years to serve in prison." *Taylor* v. *Commissioner of Correction*, supra, 94 Conn. App. 775–77.

On July 24, 2003, the petitioner filed a petition for a writ of habeas corpus claiming that he was entitled to withdraw his guilty plea because the plea was not made knowingly and voluntarily. Specifically, the petitioner alleged that, at the time of the plea, he was on "heavy medication" that had caused him to be "unable to think logically or rationally." In her return to the petition filed pursuant to Practice Book § 23-30,[5] the respondent claimed that the petition should be dismissed because the petitioner had procedurally defaulted by having failed to raise his claim either via a motion to withdraw his guilty plea prior to sentencing or on direct appeal.[6] The respondent further alleged that the petitioner had failed to allege any facts, as required by Practice Book § 23-31 (c),[7] to demonstrate cause and prejudice, which,

---

[5] Practice Book § 23-30 provides: "(a) The respondent shall file a return to the petition setting forth the facts claimed to justify the detention and attaching any commitment order upon which custody is based.

"(b) The return shall respond to the allegations of the petition and shall allege any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief."

[6] The petitioner attempted to file a direct appeal in 2005. See *State* v. *Taylor*, AC 26519. On December 7, 2005, however, the Appellate Court granted the state's motion to dismiss the defendant's appeal as untimely.

[7] Practice Book § 23-31 provides: "(a) If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply.

"(b) The reply shall admit or deny any allegations that the petitioner is not entitled to relief.

"(c) The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default. The reply shall not restate the claims of the petition."

if proven, would have excused the petitioner's procedural default. See *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 40, 779 A.2d 80 (2001) ("The appropriate standard for reviewability of habeas claims that were not properly raised at trial . . . or on direct appeal . . . is the cause and prejudice standard. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition." [Citations omitted.]). The petitioner thereafter filed a reply to the respondent's return in which he denied the respondent's claim of procedural default and her allegation that the petitioner had failed to establish cause and prejudice.[8]

After an evidentiary hearing, the habeas court rejected the petitioner's claim on the merits and rendered judgment dismissing the petition for a writ of habeas corpus.[9] Specifically, the habeas court concluded that the petitioner's guilty plea was "voluntary, knowing, intelligent and done with sufficient awareness of the relevant circumstances and the likely consequences . . . ." The habeas court determined that although the petitioner had presented evidence that he was taking four prescription drugs, namely, Zyprexa, Prozac, Remeron and Ritalin, at the time of his guilty plea, the petitioner had failed to adduce testimony concerning the nature and extent of his use of those drugs, and the evidence presented was inadequate to support the petitioner's claim that the drugs adversely had affected his mental condition at the time of his guilty plea. The habeas court also noted that those medications "presumably" are prescribed "for the purpose of enhancing the psychiatric condition of the patient," and

---

[8] The petitioner's reply contained no facts to support his general denial of the defenses raised by the respondent in her return.

[9] Although the petitioner filed his habeas petition pro se, he has been represented by counsel since the filing of his petition.

that the record was devoid of evidence indicating that any of the medications may have an adverse affect on the patient's cognitive function. Consequently, the habeas court found that the record was "clear [that the petitioner] understood what he was doing" when he entered his guilty plea and that "the medications did not in any way interfere with [the petitioner's] ability to understand and may well have enhanced his ability to understand" the consequences of his plea. Although the habeas court considered and rejected the petitioner's claim on the merits, the court did not address expressly the respondent's threshold contention that the petitioner was not entitled to review of his claim because he had procedurally defaulted and had failed to demonstrate cause and prejudice to excuse his default.[10]

The petitioner then filed a petition for certification to appeal in accordance with § 52-470 (b), which the habeas court denied. The petitioner thereafter appealed, claiming that the habeas court had abused its discretion in denying the petitioner's request for certification to appeal and that the habeas court improperly had rejected his claim that his guilty plea was not knowing, voluntary and intelligent.[11] *Taylor* v. *Commis-*

---

[10] In his habeas petition, the petitioner also raised a claim of ineffective assistance of counsel, alleging that his trial counsel improperly had failed to apprise the trial court of the petitioner's mental health problems, thereby preventing the court from determining whether a competency hearing was necessary before the court accepted the petitioner's guilty plea. *Taylor* v. *Commissioner of Correction,* supra, 94 Conn. App. 778–79. The habeas court rejected the petitioner's claim and denied his request for certification to appeal that issue. That issue is not the subject of this appeal.

[11] In his appeal to the Appellate Court, the petitioner claimed that the habeas court improperly rejected his claim of ineffective assistance of counsel and abused its discretion in denying his petition for certification to appeal with respect to that claim. See footnote 10 of this opinion. The Appellate Court concluded that the habeas court had not abused its discretion in denying the petition for certification; *Taylor* v. *Commissioner of Correction,* supra, 94 Conn. App. 778–82; and the petitioner has not appealed from that portion of the judgment. Accordingly, as we previously have indicated; see footnote 10 of this opinion; that issue is not the subject of the present appeal.

*sioner of Correction*, supra, 94 Conn. App. 783. The Appellate Court, in addressing the threshold question of whether the habeas court had abused its discretion in denying the petition for certification to appeal, explained that consideration of that issue necessarily required an examination of the petitioner's underlying claim. Id. The Appellate Court further explained that, in support of his "principal, substantive claim" that his guilty plea was not knowing, voluntary and intelligent; id.; the petitioner had raised "two subordinate claims. First, the petitioner claim[ed] that there was substantial evidence of mental impairment, requiring the trial court to undertake an independent judicial inquiry into his competency to plead guilty [in accordance with the dictates of *Pate* v. *Robinson*, 383 U.S. 375, 385, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), and *State* v. *Watson*, 198 Conn. 598, 605, 504 A.2d 497 (1986)]. . . .[12] Second, the petitioner argue[d] that even though the trial court conducted the standard plea colloquy, it was insufficient to establish that he made a knowing, voluntary and intelligent plea.[13] [Specifically, the] petitioner assert[ed]

_____

[12] The Appellate Court noted that, in support of this claim, the petitioner had asserted that "substantial evidence of mental impairment exist[ed] as a result of the following facts: (1) he was taking four separate medications for mental health issues; (2) his responses regarding whether he was taking medication were inconsistent; (3) he was being held in psychiatric units of the department of correction; (4) he stood accused of a crime that indicated irrational behavior and (5) he filed notice of a defense putting his mental health in issue." *Taylor* v. *Commissioner of Correction*, supra, 94 Conn. App. 783–84.

[13] Prior to accepting the petitioner's guilty plea, the trial court conducted the following colloquy concerning the petitioner's prescribed medication:

"The Court: As you stand before the court right now, are you under the influence of any drugs, alcohol or medication, any substance at all?

"[The Petitioner]: No, I am not.

"The Court: There is no medication or anything that would affect your ability to understand the proceedings?

"[The Petitioner]: I am under medication.

"The Court: For the record, what is the medication?

"[The Petitioner]: Prozac, and I think there is another one. I just can't remember.

"The Court: Do you understand what you are doing today?

"[The Petitioner]: Yes.

that the colloquy was insufficient because the trial court failed to determine what medication he was taking, the dosage of the medication or the effect the medication had on his ability to enter a knowing, voluntary and intelligent plea."[14] *Taylor* v. *Commissioner of Correction*, supra, 783–84.

"The Court: The medication is not affecting your ability to understand what you are doing today?

"[The Petitioner]: No.

"The Court: Do you understand the nature of this proceeding?

"[The Petitioner]: Yes.

"The Court: Attorney Merkin, do you believe the [petitioner] understands the nature of this proceeding?

"[The Petitioner's Counsel Beth A. Merkin]: Yes.

"The Court: Ms. Haselkamp?

"[The Petitioner's Counsel Mary M. Haselkamp]: Yes.

"[The Petitioner's Counsel Merkin]: I think that the record should reflect that throughout the time of our representation, he has been on medication for most of the time, and there has been no difficulty communicating with him throughout these proceedings.

"The Court: There has been no difficulty communicating with him throughout the proceedings?

"[The Petitioner's Counsel Merkin]: No.

"The Court: Nor for him to understand what is going on?

"[The Petitioner's Counsel Merkin]: No."

[14] With respect to the petitioner's claim that the trial court should have undertaken, sua sponte, an independent inquiry into his competency to plead guilty, the respondent contends, contrary to the determination of the Appellate Court, that the petitioner never raised that claim in the habeas court, thereby precluding review of the claim on appeal. The Appellate Court acknowledged that the petitioner never had referred to *Pate* or its progeny in the habeas court; *Taylor* v. *Commissioner of Correction*, supra, 94 Conn. App. 782–83 n.7; but concluded, nevertheless, that "the principle [articulated in *Pate*] is embodied in the petition filed by the petitioner, the evidence adduced at the habeas trial and the closing argument presented by counsel." Id., 782–84 n.7. The Appellate Court therefore concluded that the claim was reviewable on appeal. Id. On the basis of our review of the record of the proceedings in the habeas court, we have serious reservations about the propriety of the Appellate Court's determination that the petitioner's claims in the habeas court included a claim under *Pate*. Indeed, the fact that there is nothing in the decision of the habeas court concerning any such claim strongly suggests that the habeas court was unaware that the petitioner was raising the claim. Because we agree, however, with the respondent's alternative argument as to why the Appellate Court improperly failed to affirm the judgment of the habeas court, we assume, without deciding, that the petitioner's claim under *Pate* is reviewable.

In response, the respondent maintained that the petitioner was not entitled to consideration of the merits of his habeas petition because he had procedurally defaulted by having failed to file either a motion to withdraw his guilty plea prior to sentencing or a direct appeal raising the issue of his competency to plead guilty and, further, he had failed to allege or prove facts sufficient to satisfy the cause and prejudice requirement. Id., 782–83, 785. The respondent also claimed that, even if the petitioner had demonstrated cause to excuse his procedural default, the petitioner could not prevail on appeal because he had failed to establish that the habeas court's denial of his petition for certification to appeal had constituted an abuse of discretion.

The Appellate Court acknowledged that the petitioner had failed to allege facts to support his claim of cause and prejudice as required by Practice Book § 23-31 (c). Id., 785. The Appellate Court nevertheless concluded that "the issue of cause and prejudice was properly before the [habeas] court"; id., 786; because the respondent, by raising the affirmative defense that the petitioner had not demonstrated cause to excuse his procedural default, had "injected the issue into the habeas trial, and the habeas court allowed the petitioner to introduce evidence that relates to the failure of the petitioner to move to withdraw his plea or to seek a direct appeal from the judgment that followed his sentencing hearing."[15] Id.

---

[15] In reaching its conclusion, the Appellate Court observed that it was "mindful of the principle that pleadings should be construed broadly and realistically, rather than narrowly and technically. . . . [A pleading] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction,* supra, 94 Conn. App. 785. In light of our determination that the respondent is entitled to prevail on other grounds, we need not express any view as to the propriety of the Appellate Court's conclusion that the issue of cause and prejudice was properly before the habeas court.

The Appellate Court then addressed the question of whether the petitioner had established cause and prejudice. The Appellate Court first observed that, because the petitioner had failed to challenge the validity of his guilty plea before sentencing pursuant to Practice Book § 39-26 or on direct appeal, the petitioner had procedurally defaulted and, therefore, was required to demonstrate cause and prejudice to excuse the default. Id., 786. The Appellate Court next observed that the habeas court had made no finding as to whether the petitioner had met his burden of establishing cause and prejudice. Id. The Appellate Court thereafter stated: "This court is permitted to review the record to determine whether any evidence of cause and prejudice was provided by the petitioner. . . . Where . . . there has been evidence presented on the issues of cause and prejudice and the habeas court does not make a finding on the record that the petitioner has either met or failed to meet his burden of establishing cause and prejudice, we will not review the inadequately preserved constitutional claim on the merits. Rather, we will remand the case to the habeas court for it to determine whether the petitioner has satisfied his burden of establishing cause and prejudice." (Citation omitted; internal quotation marks omitted.) Id., 786–87. Because the Appellate Court concluded that the record of the proceedings in the habeas court revealed that the petitioner had adduced "some evidence . . . regarding his failure to raise this issue before sentencing or on direct appeal and the alleged prejudice arising therefrom";[16] id., 787;

[16] The Appellate Court concluded that the record contained the following evidence of cause and prejudice. "Throughout the proceedings, the petitioner was held in mental health units of the department of correction's facilities. The petitioner's medical records for the eight month period leading to his guilty plea indicate that he had suicidal ideations. The petitioner initially rejected the prosecution's offer of a plea bargain. Counsel testified that the petitioner previously had decided to proceed to trial because 'his feeling was that he did not intentionally murder [the victim].'

"Immediately following his arrest and incarceration, the petitioner was prescribed various dosages and combinations of Remeron, Ritalin, Prozac,

the Appellate Court remanded the case to the habeas court for a determination of whether the petitioner had satisfied his burden of establishing cause and prejudice.[17] Id., 788. In light of its remand of the case to the habeas court for a finding on the issue of cause and prejudice, the Appellate Court determined that it could not reach the merits of the petitioner's underlying claim in order to determine whether the habeas court had

---

Zyprexa, Zoloft and Cogentin. According to both the petitioner and his counsel, his emotional state fluctuated throughout the proceedings. According to counsel, the petitioner was distraught at their first meeting. At times, he clearly was depressed, but his demeanor was much more calm or level as time elapsed. Nevertheless, he was very emotional at sentencing. On the day that he accepted the plea arrangement, the petitioner, by his own account, was anxious and overwhelmed by everything.

"The petitioner, off medication by the time of the habeas hearing, described a newfound ability to understand the proceedings more clearly. He also testified that, with a clear mind, he was capable of understanding how clouded his judgment was at the time of his plea. It is undisputed that had the petitioner not pleaded guilty, counsel would have presented an extreme emotional disturbance defense, attempting to prove a mitigating circumstance reducing the charge of murder to manslaughter in the first degree. The viability of the defense is evident in the trial court's remarks that the crime was committed in a monumental rage, which, according to the habeas court, might warrant a manslaughter conviction. Had the petitioner prevailed, his sentence would have been less than the twenty-five years that he received under the plea agreement." *Taylor* v. *Commissioner of Correction*, supra, 94 Conn. App. 787–88.

[17] As we have noted, the Appellate Court characterized the petitioner's principal claim as comprised of two parts: first, that his plea canvass was inadequate, and second, that the trial court improperly failed to undertake an independent inquiry into his competency to plead guilty. *Taylor* v. *Commissioner of Correction*, supra, 94 Conn. App. 783. In its rescript, however, the Appellate Court remanded the case to the habeas court for the limited purpose of a determination by that court as to "whether cause and prejudice existed for the procedural default on the petitioner's claim that the trial court, sua sponte, should have ordered a competency hearing pursuant to *Pate* . . . ." Id., 788. We presume that the failure of the Appellate Court to include, as part of its remand order, the petitioner's claim of an inadequate plea canvass, along with the petitioner's claim under *Pate*, merely was an oversight by the Appellate Court. Accordingly, we treat the opinion of the Appellate Court as remanding the case to the habeas court for findings on the issue of cause and prejudice relating to both of the petitioner's claims.

abused its discretion in denying the petitioner's request for certification to appeal. Id.

On appeal to this court, the respondent claims that the Appellate Court improperly remanded the case to the habeas court for a determination of whether the petitioner had established cause and prejudice. In particular, the respondent contends that the remand was unnecessary, despite the fact that the habeas court did not address the issue of cause and prejudice, because the Appellate Court should have affirmed the judgment of the habeas court on the ground that the petitioner failed to demonstrate that the habeas court had abused its discretion in denying his request for certification to appeal. We agree with the respondent.[18]

[18] The cause and prejudice requirement, like the "deliberate-bypass" standard that preceded it; see *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 416–19, 589 A.2d 1214 (1991); is not jurisdictional in nature. The requirement, rather, is "a prudential limitation on the right to raise constitutional claims in collateral proceedings." *Payne* v. *Robinson*, 207 Conn. 565, 569 n.1, 541 A.2d 504 (characterizing deliberate-bypass rule), cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988). Consequently, a habeas petitioner's failure to establish cause and prejudice does not deprive either the habeas court or a reviewing court of subject matter jurisdiction over the habeas action. Contrary to the view expressed by the Appellate Court, therefore, although that court properly could have remanded for factual findings necessary for review, that court was not required, for jurisdictional purposes, to remand the case to the habeas court for a determination of whether the petitioner had established cause and prejudice. See *Taylor* v. *Commissioner of Correction*, supra, 94 Conn. App. 788 ("Evidence was presented on the issues of cause and prejudice, but the habeas court did not make a finding on the record that the petitioner had either met or failed to meet his burden of establishing cause and prejudice. We therefore cannot complete our examination of the petitioner's underlying claim to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Rather, we must remand the case to the habeas court for the determination of whether the petitioner has satisfied his burden of establishing cause and prejudice."). In the present case, considerations of judicial economy militate strongly against remanding the case to the habeas court for a finding on the issue of cause and prejudice because, as we explain more fully hereinafter, the petitioner cannot prevail on appeal irrespective of whether cause and prejudice existed to excuse his procedural default. Nevertheless, we emphasize that a habeas court generally should decide the threshold issue of cause and prejudice when it is raised as a

We begin our analysis by setting forth the appropriate standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous." *Duperry* v. *Solnit*, 261 Conn. 309, 335, 803 A.2d 287 (2002). Thus, "[t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Hutton* v. *Commissioner of Correction*, 102 Conn. App. 845, 853, 928 A.2d 549 (2007).

Furthermore, "[w]e have previously determined that if either the petitioner or the respondent is denied a timely request for certification to appeal from a habeas court's judgment, such review may subsequently be obtained only if the appellant can demonstrate that the denial constituted an abuse of discretion. . . . We recognize that [i]n enacting § 52-470 (b), the legislature intended to discourage frivolous habeas appeals. . . . A habeas appeal that satisfies one of the criteria set forth in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), is not, however, frivolous and warrants appellate review if the appellant can show: that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . [I]f an appeal is not frivolous, the habeas court's failure to grant certification to appeal is an abuse of discretion." (Citations omitted; internal quotation marks omitted.)

defense because, in the ordinary case, failing to do so undermines the prudential considerations that the cause and prejudice rule was designed to promote.

*Copas* v. *Commissioner of Correction*, 234 Conn. 139, 150–51, 662 A.2d 718 (1995).

In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria identified in *Lozada* and adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed. Upon review of the two claims raised by the petitioner, namely, that the trial court improperly failed to initiate an independent inquiry into the petitioner's competency to plead guilty, and that the plea canvass was inadequate to establish that the guilty plea was knowing, voluntary and intelligent, we agree with the respondent that the habeas court did not abuse its discretion in denying the petitioner's request for certification to appeal.

Before addressing the merits of the respondent's contention that the habeas court acted reasonably in denying the petition for certification, we summarize the law governing the petitioner's two claims. With respect to the petitioner's first claim, this court previously has explained the circumstances under which it is necessary for the court to conduct an inquiry into the competency of a criminal defendant. "[T]he guilty plea and subsequent conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitu-

tions."[19] (Internal quotation marks omitted.) *State* v. *Johnson*, 253 Conn. 1, 20, 751 A.2d 298 (2000). This constitutional safeguard, which is codified at General Statutes § 54-56d (a),[20] provides that "[a] defendant shall not be tried, convicted or sentenced while the defendant is not competent. . . . [A] defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense."

The statutory definition in § 54-56d (a) "mirrors the federal competency standard enunciated in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam). According to *Dusky*, the test for competency must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. . . . Id. . . .

"Although § 54-56d (b) presumes the competency of defendants, when a reasonable doubt concerning the defendant's competency is raised, the trial court must order a competency examination. . . . Thus, [a]s a

---

[19] We note that "the same standard used to determine competency to stand trial also applies to determine competency to plead guilty . . . ." *State* v. *Day*, 233 Conn. 813, 823, 661 A.2d 539 (1995).

[20] General Statutes § 54-56d provides in relevant part: "(a) A defendant shall not be tried, convicted or sentenced while the defendant is not competent. For the purposes of this section, a defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.

"(b) A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry.

"(c) If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency. . . ."

matter of due process, the trial court is required to conduct an independent inquiry into the defendant's competence whenever he makes specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . . The decision whether to grant a hearing requires the exercise of sound judicial discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Johnson*, supra, 253 Conn. 20–22. We note, finally, that "the 'independent inquiry' required by due process whenever an allegation of incompetence has been made is a hearing before the court, not an independent psychiatric evaluation . . . ." *State* v. *Ross*, 269 Conn. 213, 272, 849 A.2d 648 (2004).

The petitioner's sole claim regarding the plea canvass is that the canvass was insufficient with respect to the nature and effect of the medications that the petitioner was taking at the time of his guilty plea. With regard to the adequacy of a plea canvass generally, this court has explained that "[d]ue process requires that a plea be entered voluntarily and intelligently. . . . Because every valid guilty plea must be demonstrably voluntary, knowing and intelligent, we require the record to disclose an act that represents a knowing choice among available alternative courses of action, an understanding of the law in relation to the facts, and sufficient awareness of the relevant circumstances and likely consequences of the plea. . . . A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Crenshaw*, 210 Conn. 304, 309, 554 A.2d 1074 (1989). A defendant who suffers from a mental or emotional impairment is not necessarily incompetent to enter a guilty plea because "[c]ompetence . . . is not defined in terms of mental illness. An

accused may be suffering from a mental illness and nonetheless be able to understand the charges against him and to assist in his own defense . . . ." *State* v. *DeAngelis*, 200 Conn. 224, 230, 511 A.2d 310 (1986). Similarly, "[t]he fact that the defendant was receiving medication . . . [of itself] does not render him incompetent." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 205 Conn. 673, 688, 535 A.2d 345 (1987). The touchstone of competency, rather, is the ability of the defendant to understand the proceedings against him and to assist in his own defense.

We now turn to the question of whether the habeas court abused its discretion in denying the petition for certification. Both of the petitioner's claims are predicated on the contention that the medication that he was taking when he entered his guilty plea so clouded his reason and judgment that he was unable to appreciate what he was doing when he changed his plea. At the habeas trial, however, the only evidence that the medication had impaired the petitioner's ability to make a knowing, voluntary and intelligent decision to change his plea was the petitioner's uncorroborated testimony that he was able to think more clearly after he had stopped taking the medication, and that he did not stop the medication until after he had entered his plea of guilty.[21] As the habeas court explained, however, the

---

[21] At the habeas trial, the petitioner testified as follows regarding the alleged effect of the medications that he had been prescribed:

"[The Petitioner's Counsel]: Since the day of your plea on September 12, 2001, would you state—would you say that your mental health has improved?

"[The Petitioner]: I would say [it] improved early in 2002.

"[The Petitioner's Counsel]: After you were sentenced?

"[The Petitioner]: After I was sentenced, yeah.

"[The Petitioner's Counsel]: And when your health improved early in 2002, did you have an opportunity to reflect back on your decision that you made in September of 2001 [to plead guilty]?

"[The Petitioner]: Yes.

"[The Petitioner's Counsel]: And at that point did you—did you come to believe that that was the wrong decision?

"[The Petitioner]: I did, yeah.

petitioner adduced no evidence indicating that cognitive impairment is a known side effect of one or more of the prescribed medications. The habeas court further observed that, subsequent to the petitioner's arrest for murder and in preparation for trial, the petitioner had been evaluated by a psychiatrist, a psychologist and a neurologist, at least one of whom was prepared to testify in support of an affirmative defense of extreme emotional disturbance. Nevertheless, the petitioner presented no testimony at the habeas trial, either from one or more of those medical professionals, from the physician or physicians who had prescribed the medication that the petitioner was taking at the time of his guilty plea, or from anyone else, demonstrating a reasonable likelihood that the medication had adversely affected the petitioner's ability to understand the proceedings against him or to assist in his own defense. Indeed, at the plea canvass, the petitioner represented that he understood what he was doing by changing his

---

"[The Petitioner's Counsel]: And do you have any thoughts as to why you made that decision in September of 2001?

"[The Petitioner]: They were many things. As [the petitioner's trial counsel Mary S.] Haselkamp said the—I was worried about the effect it would have on the children, all the negative publicity; the trauma of putting [the victim's] family through a trial, putting my family through a trial, the way I would handle the trial myself. As I said I was very anxious and worried and so on. But I felt also at the time that I was under extreme pressure . . . .

"[The Petitioner's Counsel]: Pressure from what?

"[The Petitioner]: Pressure from the system issue, if you like. I couldn't see—I couldn't see clearly basically. I was under so much pressure, so much anxiety.

"[The Petitioner's Counsel]: And was the pressure—in your opinion was the pressure due in part to the medications that you were taking at the time you entered that plea?

"[The Petitioner]: Well having since finished with the medication I can see a lot clearly now, a lot clearer now. I think at the time my judgment was rather clouded.

"[The Petitioner's Counsel]: And you're saying that you're seeing clearer now that you're not taking medications that you were taking [in] September, 2001?

"[The Petitioner]: Yeah."

plea to guilty and, in particular, that the medication that he was taking had no bearing on his ability to appreciate the consequences of his plea. Moreover, the petitioner's attorneys, who had worked closely with the petitioner during the two and one-half years that he had been awaiting trial, informed the trial court that the petitioner had been on medication "for most of the time" prior to trial, and that counsel had had "no difficulty communicating with him throughout [the criminal] proceedings." In addition, the petitioner's counsel stated without equivocation that the petitioner understood the nature of the plea proceedings and that the medication he was taking had not impaired his ability to appreciate what he was doing by pleading guilty. Finally, at the habeas trial, the petitioner acknowledged that he had pleaded guilty because he did not want to subject either the victim's family or his own family to a trial.

On the basis of this evidence, the habeas court reasonably concluded that the petitioner had failed to establish that his guilty plea was not the product of a knowing, voluntary and intelligent decision. In particular, the habeas court reasonably found that the petitioner had failed to adduce evidence sufficient to sustain his burden of demonstrating that the petitioner's mental condition was so impaired, by medication or otherwise, that he did not understand the ramifications of his actions when he entered his plea of guilty. Because the record amply supports the findings of the habeas court—indeed, the record lacks any persuasive evidence that the petitioner either did not fully understand the nature of the charges pending against him or could not assist counsel in his own defense—we are unable to conclude that the petitioner has satisfied any one of the *Lozada* criteria. We therefore agree with the respondent that the habeas court did not abuse its discretion in denying the petitioner's request for

certification to appeal from the judgment of the habeas court dismissing his petition. Having failed to establish any plausible basis for concluding that the habeas court improperly rejected his claims, the petitioner also has failed to demonstrate any reason for a remand of the case to the habeas court for further factual findings on the issue of cause and prejudice.[22]

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to dismiss the appeal in its entirety.

In this opinion the other justices concurred.

---

[22] In view of our conclusion that it was improper for the Appellate Court to remand the case to the habeas court for a finding on the issue of cause and prejudice because the habeas court did not abuse its discretion in denying the petition for certification, we need not consider whether the record is sufficient to support a finding of cause and prejudice.