******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ERIC WHITE *v.* COMMISSIONER OF CORRECTION
(AC 39783)

DiPentima, C. J., and Sheldon and Harper, Js.

*Syllabus*

The petitioner, who had been convicted on a guilty plea of the crime of
felony murder, sought a writ of habeas corpus, claiming that his right
to due process was violated because his guilty plea was not made
knowingly, intelligently and voluntarily, and that his trial counsel pro-
vided ineffective assistance by failing to adequately research and investi-
gate the issue of his mental state at the time of his guilty plea and to
bring that information to the trial court's attention. Specifically, the
petitioner claimed that the medication he was taking on the day of his
guilty plea substantially impacted his ability to understand the plea
agreement and proceedings. The habeas court rendered judgment deny-
ing the habeas petition, from which the petitioner, on the granting of
certification, appealed to this court. *Held*:

1. The habeas court did not err in failing to find that the petitioner's due
process rights were violated; that court found that the petitioner's guilty
plea canvass was constitutionally sufficient, as the petitioner had denied
taking any drugs, alcohol or medication the day of the plea canvass and
indicated that he had discussed his case with his counsel, and that the
petitioner had acknowledged at sentencing that he had taken medication
for the purpose of falling asleep and gave no indication that he wanted
to withdraw his plea, the habeas court's findings were adequately sup-
ported by the record, which showed that the petitioner's responses to
the trial court's questions during his canvass demonstrated that he fully
understood the circumstances, and although the habeas court did not
completely discredit the petitioner's testimony at the habeas trial that
he had taken medication at the time of his guilty plea, that it made him
feel like a zombie and that he lied about not taking medication at the
plea hearing because he thought it would help him, it did not specifically
credit anything to which he testified, and it was not for this court,
in deciding whether the petitioner's guilty plea was made knowingly,
intelligently and voluntarily, to discard the habeas court's credibility
determination that the evidence bordered on frivolous and was insuffi-
cient to prove a due process violation.

2. The habeas court did not err in concluding that the petitioner's trial
counsel did not render ineffective assistance: that court credited trial
counsel's testimony as to his numerous visits and discussions with the
petitioner, that it was clear that the petitioner understood what he was
doing, and that he had no concerns regarding the petitioner's mental
state, and in light of that testimony and because the record did not evince
that the petitioner was actually impaired by the use of any medication,
his trial counsel was not deficient for failing to investigate the petitioner's
mental health further or to bring his mental state to the attention of the
court; moreover, even if trial counsel's performance was deficient, the
record did not show a reasonable probability that the petitioner would
have chosen to proceed to trial rather than plead guilty if trial counsel
had further investigated the petitioner's mental state or brought it to
the trial court's attention.

Argued March 19—officially released May 22, 2018

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland, and tried to the court, *Oliver, J.*; judgment
denying the petition; thereafter, the court granted the
petition for certification to appeal, and the petitioner
appealed to this court. *Affirmed.*

*Michael W. Brown*, for the appellant (petitioner).

*Linda F. Currie-Zeffiro*, assistant state's attorney, with whom were *John C. Smriga*, state's attorney, and *Emily Trudeau*, assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Eric White, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly rejected his claims that (1) his right to due process was violated because his guilty plea was not made knowingly, intelligently and voluntarily and (2) his right to effective assistance of counsel was violated because his attorney failed to adequately research and investigate the issue of the petitioner's mental state at the time of his guilty plea and to bring information about the petitioner's compromised mental state to the attention of the criminal trial court. We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts and procedural history are relevant to this appeal. On August 11, 2004, the petitioner, represented by Attorney Joseph Bruckmann, pleaded guilty under the *Alford*[1] doctrine to one count of felony murder in violation of General Statutes §§ 53a-54c and 53a-54a (a). The trial court indicated that it intended to sentence the petitioner to fifty years of imprisonment, which it did on November 5, 2004. The petitioner did not appeal from his conviction following his plea and sentencing or file any postjudgment motions.

The petitioner petitioned for a writ of habeas corpus on January 8, 2014. After counsel was appointed, the petitioner filed an amended petition on May 23, 2016, asserting that Bruckmann had provided ineffective assistance of counsel and that the petitioner's due process rights had been violated because his guilty plea was not made knowingly, intelligently and voluntarily. The thrust of his claims was that medication the petitioner was taking on the day of his guilty plea "substantially impacted his ability to understand the plea agreement and the plea proceedings," that he would not have entered a guilty plea had he not been so medicated, and that Bruckmann was ineffective for failing to research and investigate the issue regarding his mental condition or to bring such information to the court's attention. (Internal quotation marks omitted.)

At the habeas trial on September 19, 2016, Bruckmann, the petitioner, and the petitioner's psychiatric expert, James Phillips, testified. The petitioner also entered into evidence the transcripts of his guilty plea and sentencing, and medical records detailing his medication usage around the time of his guilty plea. The respondent, the Commissioner of Correction, offered no evidence.

On September 27, 2016, the habeas court issued its memorandum of decision denying the amended petition for a writ of habeas corpus. The court credited the testimony of Bruckmann and Phillips in determining that the petitioner had failed to establish ineffective

assistance of counsel or a due process violation.[2] In evaluating the transcripts in evidence, the court observed that Bruckmann and the trial court made the petitioner aware "of all necessary information to make an informed decision . . . whether to enter a plea or take his case to trial." In considering the petitioner's own testimony, although the habeas court did not find that testimony completely lacking in credibility, it found that such testimony was "wholly insufficient to prove any of the necessary elements to establish either a due process violation or a claim of ineffective assistance of counsel. Contrasted with the other, more credible evidence adduced at trial, the petitioner's proffered evidence in support of his claims borders on the frivolous."

The petitioner petitioned the habeas court for certification to appeal, which the court granted. This appeal followed.

We begin with generally applicable legal principles. "The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Questions of law and mixed questions of law and fact receive plenary review." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 174, 982 A.2d 620 (2009). "The application of the habeas court's factual findings to the pertinent legal standard . . . presents a mixed question of law and fact . . . ." *Duperry* v. *Solnit,* 261 Conn. 309, 335, 803 A.2d 287 (2002).

I

The petitioner first claims that the habeas court erred in failing to find that his due process rights were violated because his underlying guilty plea was not made knowingly, intelligently and voluntarily. Specifically, he argues that the medication he was taking at the time of his guilty plea "completely undermined his ability to meaningfully consider his decision to plead guilty [and] interfered with his ability to understand the plea agreement and the guilty plea proceeding." We disagree.

"[T]he guilty plea and subsequent conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. . . . This constitutional safeguard, which is codified at General Statutes § 54-56d (a), provides that [a] defendant shall not be tried, convicted or sentenced while the defendant is not competent. . . . [A] defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense. . . .

"[T]he test for competency must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational under-

standing—and whether he has a rational as well as factual understanding of the proceedings against him. . . .

"Although § 54-56d (b) presumes the competency of defendants, when a reasonable doubt concerning the defendant's competency is raised, the trial court must order a competency examination. . . . Thus, [a]s a matter of due process, the trial court is required to conduct an independent inquiry into the defendant's competence whenever he makes specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . .

"[D]ue process requires that a plea be entered voluntarily and intelligently. . . . Because every valid guilty plea must be demonstrably voluntary, knowing and intelligent, we require the record to disclose an act that represents a knowing choice among available alternative courses of action, an understanding of the law in relation to the facts, and sufficient awareness of the relevant circumstances and likely consequences of the plea. . . . A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances. . . . A defendant who suffers from a mental or emotional impairment is not necessarily incompetent to enter a guilty plea because [c]ompetence . . . is not defined in terms of mental illness. An accused may be suffering from a mental illness and nonetheless be able to understand the charges against him and to assist in his own defense . . . . Similarly, [t]he fact that the defendant was receiving medication . . . [of itself] does not render him incompetent. . . . The touchstone of competency, rather, is the ability of the defendant to understand the proceedings against him and to assist in his own defense." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 449–52, 936 A.2d 611 (2007).

The habeas court found no due process violation. In its memorandum of decision, the habeas court first found that the petitioner's guilty plea canvass was constitutionally sufficient, noting that the petitioner had denied having taken any drugs, alcohol, or medication that day. The court also noted that the petitioner indicated at his plea proceeding that he and Bruckmann had discussed the case, including the underlying elements of the charges. The habeas court also observed that the trial court had indicated the sentence it intended to impose on a later date. The petitioner reaffirmed his understanding of the decision to plead guilty and accept a fifty year sentence.

The habeas court also considered the transcript of the petitioner's sentencing, where the petitioner accepted

responsibility for his actions and acknowledged that "fifty years is not enough" for his offense. (Internal quotation marks omitted.) The petitioner gave no indication that he wanted to withdraw his plea. The petitioner did acknowledge taking medication at the time, but stated that it was for the purpose of falling asleep.

At the habeas trial, the petitioner testified that he was taking medication at the time of his guilty plea, although he could not recall what he was taking. He also testified that he continued taking medication until about six to eight months after he was sentenced, having taken himself off it because it "made [him] feel like [he] wasn't in the right state of mind half the time" and "a robot, a zombie . . . ." He claimed that these feelings affected his decision-making at and before the time he pleaded guilty because he did not always understand Bruckmann in their conversations before the plea.[3]

When the petitioner was asked why he denied taking any medication on the day of his plea, the petitioner claimed that he did not want to seem "insane" to the trial judge and that answering affirmatively would only have harmed him. Then, in response to a question regarding why he had pleaded guilty, the petitioner stated, "I [pleaded] guilty to benefit my family and to keep any more harm coming upon my family, so I just said, I understand and I [pleaded] guilty. I wanted to plead guilty to get it over with. Those were my exact words to [Attorney] Bruckmann. I want to get it over with to keep my mother from going through what she was going through." The petitioner then claimed that the medication he was taking affected these feelings. Finally, when asked why he was challenging his conviction almost ten years after his plea, he stated, "[w]ell, due to the fact that I've been incarcerated for fourteen years now and . . . I had time to think about everything that happened . . . and due to the fact that I'm older and I just feel like . . . I have nothing to really lose from wanting my freedom back, and also my family." The petitioner then denied having waited ten years for evidence to be destroyed.

On cross-examination, the petitioner was asked again why he waited ten years to challenge his plea. He responded that he was scared and did not understand the law at the time. Counsel for the respondent then asked when the petitioner became aware that his medication was an issue. The petitioner responded that he became aware of that issue after sentencing. Finally, when asked why he had lied about not taking medication at his plea hearing, the petitioner said, "I thought it would help."

We conclude that the habeas court's findings are supported more than adequately by the record. The petitioner's responses to the trial court's questions during his canvass show that he fully understood the circumstances. "A court may properly rely on . . . the

responses of the [petitioner] at the time [he] responded to the trial court's plea canvass . . . ." (Internal quotation marks omitted.) *Bigelow* v. *Commissioner of Correction*, 175 Conn. App. 206, 215–16, 167 A.3d 1054, cert. denied, 327 Conn. 929, 171 A.3d 455 (2017). The petitioner's claim that he felt like a "zombie" and not in control of his actions is not borne out by the transcripts of the plea proceeding. Because the petitioner's expert offered no opinion as to the petitioner's mental state at the time of his plea; see footnote 3 of this opinion; the only evidence that could establish that the petitioner was not lucid at the time of his plea is his own testimony.[4] Although the habeas court did not completely discredit the petitioner's testimony, it did not specifically credit anything to which he testified, stating instead that his evidence "border[ed] on the frivolous," and was insufficient to prove a due process violation.[5] We are not at liberty to discard this credibility determination in deciding whether the petitioner's guilty plea was made knowingly, intelligently and voluntarily. The burden was on the petitioner to establish "a reasonable likelihood that the medication had adversely affected the petitioner's ability to understand the proceedings against him or to assist in his own defense." *Taylor* v. *Commissioner of Correction*, supra, 284 Conn. 453. In the absence of any other convincing evidence to the contrary, we cannot say that the habeas court erred in not finding the relevant facts to establish a due process violation.

## II

The petitioner also claims that the habeas court erred in not determining that his trial counsel provided ineffective assistance. Specifically, the petitioner argues that Bruckmann failed to research adequately and to investigate the issue of the petitioner's mental state at the time of his guilty plea, and to bring information about the petitioner's compromised mental state to the attention of the trial court. We are not persuaded.

"To prevail on a constitutional claim of ineffective assistance of counsel resulting from a guilty plea, a petitioner must establish both that his counsel's performance was deficient and that the deficient performance prejudiced him. See *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L .Ed. 2d 674 (1984); *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 721, 789 A.2d 1046 (2002). To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . A reviewing court can find against a petitioner on either ground, whichever is easier. . . . The petitioner

cannot rely on mere conjecture or speculation to satisfy either the performance or prejudice prong but must instead offer demonstrable evidence in support of his claim." (Internal quotation marks omitted.) *Cox* v. *Commissioner of Correction*, 127 Conn. App. 309, 314, 14 A.3d 421, cert. denied, 301 Conn. 902, 17 A.3d 1043 (2011).

The habeas court, in its memorandum of decision, found that the petitioner failed to establish that Bruckmann rendered ineffective assistance. The court credited Bruckmann's testimony as to his numerous visits and discussions with the petitioner. Bruckmann had also testified that the petitioner wanted to enter the plea and accept his sentence and that it was clear to Bruckmann that the petitioner understood what he was doing, such that Bruckmann perceived no "red flags" concerning the petitioner's mental state. (Internal quotation marks omitted.) In addition, Bruckmann engaged the services of a forensic psychiatrist to evaluate the petitioner for any potential defenses to his murder charge. Bruckmann indicated that the psychiatrist reported no signs of psychosis or that the petitioner's mental health was an issue.

The petitioner argues that he was prejudiced because he would not have pleaded guilty but for Bruckmann's failure to adequately research and investigate the petitioner's mental state. He also argues that he was prejudiced because the trial court would not have accepted his guilty plea had Bruckmann not failed to bring to the attention of the trial court the petitioner's compromised mental state.[6] His prejudice arguments necessarily depend on his argument that his mental state was compromised at the time of his pleas, which we determined was not borne out by the record in the context of his due process claim. See part I of this opinion. We likewise reject that argument underlying these claims of ineffective assistance. "Because the record before us does not evince that the petitioner was actually impaired by the use of any psychotropic drugs, we cannot conclude that his counsel was deficient in failing to investigate his mental . . . health further." *Hunnicutt* v. *Commissioner of Correction*, 83 Conn. App. 199, 207, 848 A.2d 1229, cert. denied, 270 Conn. 914, 853 A.2d 527 (2004). Given Bruckmann's credited testimony that he perceived no "red flags," we likewise cannot conclude that Bruckmann was deficient for failing to bring the petitioner's mental state to the attention of the court, because such testimony is contraindicative of "a reasonable doubt concerning the [petitioner's] competency . . . ." *Taylor* v. *Commissioner of Correction*, supra, 284 Conn. 450. Even if we assume deficient performance, the record does not show "a reasonable probability that [the petitioner] would have chosen to proceed to trial rather than plead guilty" if Bruckmann had further investigated the petitioner's mental state or brought it to the trial court's attention.

*Hunnicutt* v. *Commissioner of Correction*, supra, 210. Therefore, the habeas court did not err in concluding that Bruckmann did not render ineffective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] Phillips called the petitioner's dosage of lithium that he took the day of his plea "fairly standard." Additionally, the court noted that "[Phillips] testified that he could not render an expert opinion on the petitioner's ability, twelve years ago, to enter a voluntary, knowing and intelligent plea, as there were too many unknowns . . . ."

[3] Phillips stated that the petitioner's dosage of lithium on the day of his plea was "fairly standard" and testified as to some of lithium's and Remeron's side effects, but offered no opinion as to the petitioner's mental state at the time of his plea.

[4] The petitioner argues that his medication records also are indicative of his mental state at the time of his guilty plea. Without testimony from Phillips that such medication was reasonably likely to have caused negative effects on the petitioner's willpower at the time of the plea, we are not convinced that these medical records have much probative value.

[5] To the extent that his testimony could be credited, the petitioner testified to choosing to plead guilty to avoid problems for his family and not telling the court that he was on medication to avoid appearing "insane," both of which would tend toward the type of lucidity inherent in someone making a knowing, intelligent and voluntary guilty plea.

[6] The petitioner argues "that the trial court had an independent duty to assess the petitioner's mental state at the time of his guilty plea," but provides no legal authority to support this proposition. Rather, we consider whether the petitioner would have pleaded guilty but for Bruckmann's failure to notify the court of the petitioner's compromised mental state. See *Cox* v. *Commissioner of Correction*, supra, 127 Conn. App. 314.