******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

Cradle, Clark and Flynn, Js.

*Syllabus*

The petitioner, who had been convicted of the crimes of felony murder, robbery in the first degree and conspiracy to commit robbery in the first degree, and sentenced to sixty years' incarceration, sought a writ of habeas corpus, claiming ineffective assistance of his trial counsel for, inter alia, failing to adequately investigate his mental health history and to adequately present such evidence as mitigation at sentencing. The habeas court denied the petitioner's claim of ineffective assistance of counsel, determining that certain mental health records offered by the petitioner at the habeas trial did not "materially expand" on the information that had been presented to the sentencing court in the presentence investigation report. The court further determined that the petitioner had failed to prove that there was any reasonable probability that his sentence would have been different had his trial counsel provided those mental health records to the sentencing court, and that no prejudice to the petitioner had been established. The court did not address the issue of deficient performance. Following the denial of his petition for certification to appeal, the petitioner appealed to this court. *Held*:

1. The habeas court abused its discretion in denying the petition for certification to appeal: the record revealed an unusually troubled, traumatic and extensive mental health history, significant parts of which were not in the presentence investigation report, such that the petitioner's ineffective assistance of counsel claim involved issues that were debatable among jurists of reason, were such that a court could resolve the issues in a different manner and raised questions that deserved encouragement to proceed further; moreover, it was premature to decide whether the judgment of the habeas court should be reversed on the merits because findings were necessary from the habeas court about whether the petitioner's trial counsel rendered constitutionally deficient performance, and this court deferred its decision until it reviewed the habeas court's findings ordered in its remand.

2. The habeas court erred in determining that no prejudice to the petitioner had been established under *Strickland* v. *Washington* (466 U.S. 668), there being a reasonable probability that his sentence would have been less severe in light of the mitigating evidence that was presented at the habeas trial and not presented at sentencing: the presentence investigation report before the sentencing court did not relate how any of the petitioner's traumatic life events and psychiatric history might mitigate or lessen his punishment, and it failed to provide the detailed and expanded psychiatric history that was presented in the mental health records that were admitted as full exhibits at the habeas trial, as these records provided a fuller picture of the past trauma experienced by the petitioner as a child, as well as a detailed analysis of his command hallucinations and paranoid delusions; moreover, the progress notes from the records, which ended only a few months before the date of his crimes, detailed how his hallucinations gradually decreased and eventually ceased when he took a specific dosage of a specific medication daily, and the information in the presentence investigation report that the petitioner had not taken any medication in some time and was not seeing a mental health counselor coupled with the information in his mental health records that he experienced hallucinations when he did not take a specific medication provided relevant information as to how the additional information contained in the mental health records might reasonably have justified a less severe sentence.

3. This court remanded this case to the habeas court for the purpose of making underlying factual findings from the record and, based on those findings, for a determination of whether the petitioner has shown that his trial counsel's representation of him at sentencing constituted constitutionally deficient performance; moreover, this court had no findings

of fact from the habeas court regarding trial counsel's performance to make a determination under *Strickland*, and, as members of an appellate tribunal, could not make factual findings for the first time on appeal.
(*One judge dissenting*)

Argued November 16, 2021—officially released April 26, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Remanded*; *further proceedings*.

*Vishal K. Garg*, for the appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Sharmese Hodge*, state's attorney, and *JoAnne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, J. Sentencing is a critical stage of the criminal process. *Gardner* v. *Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). In *United States* v. *Pinkney*, 551 F.2d 1241, 1249 (D.C. Cir. 1976), the court held that "the first step toward assuring proper protection for the rights to which defendants are entitled at sentencing is recognition by defense counsel that this may well be the most important part of the entire proceeding." Before this court is the appeal of the petitioner, Antwan Sease, following the habeas court's denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner raises three principal issues on appeal: (1) the court abused its discretion in denying certification to appeal; (2) his right of due process was violated by the prosecuting authority's knowing presentation of false testimony at his criminal trial; and (3) the court improperly denied his claim that his right to effective assistance of trial counsel at sentencing was violated. We make no determination as to whether the petitioner prevails on his third claim, but we conclude that the habeas court improperly denied his petition for certification to appeal, and remand the matter to the habeas court for additional factual findings regarding the performance prong of his ineffective assistance of counsel at sentencing claim. We leave the petitioner's second claim to another day in light of our remand order on his third claim.

For our purposes here, the underlying facts can be summarized from this court's opinion affirming the judgment of his conviction in *State* v. *Sease*, 147 Conn. App. 805, 83 A.3d 1206, cert. denied, 311 Conn. 932, 87 A.3d 581 (2014), as follows. On October 3, 2009, the petitioner met with another man, Quan Morgan. Id., 807. Each armed himself with a .38 caliber handgun that the petitioner had provided. Id. At approximately 2:30 a.m., the petitioner and Morgan walked to the rear of a club on Main Street in Hartford where they robbed two men in the presence of several witnesses. Id., 807–808. The petitioner walked up to a car in which the victim, Edward Haslam, was seated. Id. After telling Haslam to " 'empty your [f—] pockets,' " the petitioner fatally shot Haslam in the chest. Id., 808. Following a jury trial, he was convicted of felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-48. The petitioner was sentenced to thirty years' incarceration for felony murder, twenty years' incarceration for robbery, and ten years' incarceration for conspiracy to commit robbery, which sentences were to run consecutively to each other, for a total effective sentence of sixty years' incarceration. A total effective sentence

of sixty years imprisonment is equivalent to a life sentence. See General Statutes § 53a-35b.

In 2016, the petitioner commenced the present habeas action. In the operative third amended petition for a writ of habeas corpus, filed in 2018, the petitioner alleged in count three that his trial counsel provided ineffective assistance for several reasons, including failing to investigate adequately the petitioner's mental health history and failing to present such evidence adequately as mitigation at sentencing.

In denying the petitioner's claim of ineffective assistance of trial counsel, the habeas court determined that the two mental health records offered by the petitioner at the habeas trial did not "materially expand" on the information that had been presented to the sentencing court in the presentence investigation report and, therefore, the petitioner had failed to prove that there was any reasonable probability that his sentence would have been different had his trial counsel provided those mental health records to the sentencing court. The court concluded that no prejudice to the petitioner had been established. The court did not address the issue of deficient performance. The petitioner filed a petition for certification to appeal, which the habeas court denied. This appeal followed. Additional facts and procedural history will be set forth as necessary.

We first address the habeas court's denial of the petitioner's petition for certification to appeal. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and the applicable legal principles." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 564, 941 A.2d 248 (2008), quoting in part *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing

by the petitioner, the judgment of the habeas court must be affirmed." *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 449, 936 A.2d 611 (2007).

We conclude on the basis of our review of the petitioner's substantive claims on the merits that he has demonstrated that the court abused its discretion in denying certification to appeal. The record in the present case reveals an unusually troubled, traumatic, and extensive mental health history, significant parts of which were not also in the presentence investigation report. The petitioner had both audio and visual hallucinations throughout his life, was professionally diagnosed with schizophrenia, psychotic disorder, and posttraumatic stress disorder, and he was prescribed a variety of psychiatric medications including Risperdal, Ritalin, Risperidone, and Trazodone. For reasons that follow, we conclude that the habeas court abused its discretion in denying his petition for certification to appeal. His ineffective assistance of counsel claim involves issues that are debatable among jurists of reason, are such that a court could resolve the issues in a different manner and raise questions that deserve encouragement to proceed further. See *Simms* v. *Warden*, supra, 230 Conn. 616. Although the petitioner has surmounted that hurdle, we note on the basis of our review of the record that it would be premature to proceed to the final step wherein this court would decide whether the judgment of the habeas court should be reversed on the merits. It is premature because findings are necessary from the habeas court about whether the petitioner's trial counsel rendered constitutionally deficient performance. We defer our decision with respect to whether the judgment of the habeas court should be reversed on the merits until we have reviewed the habeas court's findings that we order in our remand.

We next turn in our analysis to the petitioner's claim that the habeas court improperly denied his claim that his right to effective assistance of trial counsel had been violated. The petitioner argues that his trial counsel was ineffective by failing to properly investigate and to adequately present evidence of the petitioner's mental health history in mitigation at the sentencing hearing.[1] The habeas court noted that among the petitioner's claims was that his trial counsel "failed to investigate and use the petitioner's mental health background as mitigation at sentencing." We see two aspects to the petitioner's claim. One is the alleged failure to investigate further. The other aspect is the failure of trial counsel to use all of the petitioner's mental health history that was presented to the habeas court as mitigation at sentencing. Because both aspects of this claim concern the petitioner's mental health records, the effectiveness of trial counsel at sentencing, and involve arguments that are linked in that they both involve some of the same facts, we will treat them together.

Our review of the petitioner's sixth amendment ineffective assistance of counsel claim is guided by the factors set forth by the United States Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A convicted [petitioner's] claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id., 687. To establish prejudice, one "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694.

Practice Book § 43-13 requires that a defense counsel familiarize himself not only with the contents of the presentence investigation report, but also with "any special medical or psychiatric reports pertaining to the client." Prevailing norms of practice as reflected in the American Bar Association Standards are guides for determining what is reasonable. We, therefore, look to the following American Bar Association Standards for defense counsel at sentencing. "Early in the representation, and throughout the pendency of the case, defense counsel should consider potential issues that might affect sentencing. Defense counsel should become familiar with the client's background . . . ." A.B.A. Standards for Criminal Justice: Defense Function (4th Ed. 2017) standard 4-8.3 (a), available at americanbar. org/groups/criminal_justice/Standards/DefenseFunction FourthEdition/ (last visited April 21, 2022). "Defense counsel should present all arguments or evidence which will assist the court or its agents in reaching a sentencing disposition favorable to the accused." Id., standard 4-8.3 (c). "Defense counsel should gather and submit to the presentence officers, prosecution, and court as much mitigating information relevant to sentencing as reasonably possible . . . ." Id., standard 4-8.3 (d). "If a presentence report is made available to defense counsel, counsel should seek to verify the information contained in it, and should supplement or challenge it if necessary. . . . In many cases, defense counsel should independently investigate the facts relevant to sentencing, rather than relying on the court's presentence report . . . ." Id., standard 4-8.3 (e).

We turn to the prejudice prong of *Strickland*. The petitioner argues that "the habeas court failed to recognize the significance of the petitioner's mental health records." He further argues that "the petitioner's involvement in

this crime could be directly traced to changes in his mental health treatment, and the resulting reemergence of command hallucinations that played a causal role in the petitioner's criminal activity. That was powerful mitigating information . . . ." The petitioner contends that the following testimony from Morgan at the criminal trial indicates that the shooting resulted from a command hallucination: "All we was doin' was supposed to go get something to eat, but in the mix of going to get something to eat it was when [the petitioner] started talking to himself. He says, they got to be him, they got to be him. I asked him, what are you talking about?"

The respondent, the Commissioner of Correction, counters that the petitioner cannot show that he was prejudiced. The respondent contends that any failure of trial counsel to investigate the petitioner's lengthy psychiatric history and any failure to bring the extent of that history to the attention of the sentencing court was harmless because the presentence investigation report summarizes that history. We agree with the petitioner that he has satisfied the prejudice prong of *Strickland*, and we are not convinced by the respondent's argument.

In analyzing the prejudice prong in the present case, we must determine whether, in light of the mitigating evidence that was presented at the habeas trial and not presented at sentencing, there is a reasonable probability that the sentence would have been less severe. See, e.g., *Wiggins* v. *Smith*, 539 U.S. 510, 534–36, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). The United States Supreme Court has observed that, "[e]ven though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because any amount of [additional] jail time has [s]ixth [a]mendment significance." (Internal quotation marks omitted.) *Lafler* v. *Cooper*, 566 U.S. 156, 165, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012).

In determining the petitioner's sentence, the sentencing court had before it the remarks of the petitioner's trial counsel as well as the contents of the presentence investigation report. That report,[2] under the heading of "Medical/Mental Health," alerted the sentencing court that when the petitioner was six years old, he witnessed his uncle shoot and kill his aunt and that when he was eight years old he witnessed his babysitter being shot and killed by his uncle. The presentence investigation report noted that the petitioner had been treated "on and off" with Ritalin for attention deficit disorder, and that he also had been diagnosed with post-traumatic stress disorder, and that he had been prescribed Risperdal and Trazodone, but that the last time he took any medication was in early 2009. It further stated that in 2007, he received medical treatment after being stabbed in his right arm, chest, and pelvic area; that in May,

2009, he received medical treatment as a result of a bullet wound to his left thigh; and that in October of that same year he was treated for a bullet wound to his left knee. Additionally, the presentence investigation report stated that records from the Department of Children and Families indicated that the petitioner had been diagnosed with schizophrenia and psychotic disorder and that he had attacked innocent people due to his hallucinations. It further stated that in September, 2006, it was reported that he spent 90 percent of his time locked in the bathroom listening to music as that was where he felt safe. The presentence investigation report revealed that the petitioner had a history of being a danger to himself and others. The probation officer writing the presentence investigation report concluded that the petitioner was in great need of mental health treatment to deal with his past trauma and respectfully recommended that, considering the nature of the offenses, the petitioner receive a lengthy period of incarceration.

In his statement to the sentencing court on the petitioner's behalf, trial counsel commented: "[S]ociety sort of let him go. I mean he had mental problems. He was hiding in a bathroom, he witnessed murders, he was abused, his mother had problems with substance abuse . . . . I mean I know that there was probably some attempts here and there and at one point, probably when it was too late and he didn't want any counseling. . . . [W]here was the system? . . . But you know anybody that reads this presentence report has got to come away and say, well he didn't have much of a chance, did he? . . . And some of the things in this report, Your Honor, I was unaware of. I was unaware that . . . some of the mental problems that he had that are mentioned. In talking to him over the last year or so, I did go to see him three or four times, Your Honor, at the jail. And sometimes—you know, I'm not sure if we were on the same wavelength. You know, I would talk to him and we would—so we got through and I'm not a psychiatrist and I'm not a doctor. You know I talk to people all the time. Like I say, I was unaware of some of the things that came out of this [presentence investigation report] but looking back now, what I read, I could filter it through and put it together in my equation of when I talked to him and some of the things that we talked about or some of the times we talked. Sometimes, you know, I wasn't reaching him and now I know that maybe there was a reason I wasn't able to reach him. But I'd ask the court to be merciful. I know it's hard but I think he deserves some mercy, Your Honor." The petitioner's trial counsel did not go further into the petitioner's history and treatment for mental illness.

The record indicates that the petitioner's trial counsel had represented approximately 10,000 defendants in criminal cases prior to his trial and that he met with the petitioner several times at the jail in which he was incarcerated awaiting trial. He further testified that he

did not recall if he was ever alerted by the petitioner or the petitioner's mother about the extent of the petitioner's mental health history. The habeas court, however, made no findings as to any of this. It appears from the record at sentencing that although the petitioner ultimately agreed that trial counsel would speak for him, he had first requested new counsel be appointed by the court, considered representing himself, and finally agreed that his trial counsel could represent him at sentencing.

The effectiveness of trial counsel at the sentencing hearing is not rendered harmless by the presentence investigation report, which was compiled by the Office of Adult Probation. The presentence investigation report does not relate how any of the petitioner's traumatic life events and psychiatric history might mitigate or lessen his punishment. A presentence investigation report gives a sentencing judge the benefit of a summary background it has gathered on a defendant. It makes a recommendation as to whether incarceration is appropriate; however, the Office of Adult Probation is not an advocate for a criminal defendant before the sentencing court. The role as trial counsel and as an advocate includes relating to the sentencing court how a client's lengthy mental health history could justify some mitigation of the court's sentence unless there are strategic or other good reasons not to do so.

We examine the differences in the information contained in the petitioner's presentence investigation report, which was considered by the sentencing court, and the petitioner's mental health records,[3] to determine whether there was a reasonable probability that the additional information contained in the mental health records but not in the presentence investigation report could have had an effect on the severity of the petitioner's sentence had those records been provided to the sentencing court as mitigating evidence. The following matter is included in the petitioner's mental health records, but was not mentioned in the presentence investigation report. Unlike the summary description contained in the presentence investigation report, his mental health records provide illuminating details of his battle with mental health concerns. The presentence investigation report made no mention of the petitioner having experienced visual hallucinations in which he had visions of his deceased aunt speaking to him. In contrast, the mental health records described how he was disturbed by his visual hallucinations of his murdered aunt accusing him of causing her death and that he began hearing audio command hallucinations when he was eight years old, but that those hallucinations went away spontaneously only to reappear in 2005, when the petitioner was approximately sixteen years old. The presentence investigation report made no mention that the mental health records indicated that the petitioner began treating with a psychiatrist in 2006,

when he was seventeen years old and in the ninth grade. Unlike the presentence report, the mental health records note that he had received special education services since he was in the fifth grade. The presentence investigation report under the heading "Substance Abuse" mentioned the petitioner's use of alcohol and marijuana, but did not mention, as did his mental health records, that he smoked marijuana in attempt to quiet his hallucinations. The presentence investigation report briefly mentioned that the petitioner experienced hallucinations and had attacked innocent people based on them, but the mental health records explained that the petitioner was arrested after obeying an audio command hallucination to assault a police officer, thereafter, attempted to set the jail in which he was held on fire, and, subsequently, after attempting suicide, was transferred to a psychiatric facility where he was given medication for sleep, but where he received no antipsychotic medication.

The mental health records also provided the following details concerning the petitioner's hallucinations and paranoia, which were not mentioned in the presentence investigation report. These records indicated that prior to seeking treatment from a psychiatrist in 2006, the petitioner hallucinated daily, experienced paranoia, and was frightened that people wanted to kill him. The mental health records further indicated that the petitioner stated during a 2006 visit with a psychiatrist that, since leaving jail, he felt that he could resist any command hallucinations that told him to do something dangerous to himself or others. Unlike the presentence investigation report, the progress notes detailed his battle with these symptoms and stated that, at various points during his treatment, the petitioner thought that the radio and television talked about him, was fearful that someone might want to harm him, wanted to stay in the apartment to avoid problems, and thought that one of his therapists was a witch who intended to steal his soul. The mental health records noted that the petitioner was paranoid, was not able to make eye contact comfortably, and seemed quite scared and distracted. The presentence investigation report mentioned that the petitioner had taken medication, but did not detail the effect that medication had on his hallucinations. In contrast, the mental health records included an initial assessment from 2006 when the petitioner was seventeen years old as well as progress notes until June, 2009, a few months before the underlying crimes. The mental health records detail how, after gradually increasing the dosage of medication, the petitioner's audio hallucinations became muffled and described how once the petitioner began taking a specific dosage of medication, he experienced substantial improvement, began smiling, and had no residual hallucinations. The records further detail how the petitioner's hallucinations and paranoia returned and began increasing

after he ran out of medication.

We emphasize that the presentence investigation report failed to provide the detailed and expanded psychiatric history that was presented in the two mental health records that were admitted as full exhibits at the habeas trial. The mental health records provided a fuller picture of the past trauma experienced by the petitioner as a child, as well as a detailed analysis of his command hallucinations and paranoid delusions that others were after him. The mental health records also detailed the harm that the petitioner caused to others as a result of his command hallucinations, which instructed him to assault a police officer and then, while he was in jail for that offense, caused him to attempt to set the jail on fire. The progress notes from the mental health records detail how the hallucinations gradually decreased when he took increased dosages of a specific medication daily and eventually ceased when he took a specific dosage of that medication daily. The progress notes of his treatment end in June, 2009, only a few months before the robbery and murder, indicating that he did not show for his appointment with his psychiatrist. The presentence investigation report indicated that the petitioner was not currently seeing a mental health counselor. The murder of the victim had occurred in October, 2009, and the presentence investigation report indicated that the last time the petitioner had taken any medication was early in 2009. That information from the presentence investigation report, when coupled with the information in his mental health records that the petitioner experiences hallucinations when he does not take a specific dosage of a specific medication, provides relevant information as to how the additional information contained in the mental health records might reasonably justify a less severe sentence. The sixty year sentence that the petitioner received constitutes a life sentence. See General Statutes § 53a-35b. Instead of having illuminating evidence from the mental health records before it, the sentencing court had only the summary presentence investigation report that recommended a lengthy sentence and trial counsel's statement that he was unaware "of some of the things that came out of this [presentence investigation report]" concerning the petitioner's mental health concerns. Had the sentencing court been aware of the lengthy, detailed psychiatric history in the petitioner's mental health records, there is a reasonable probability that his sixty year sentence would have been less severe.[4]

We now turn to *Strickland*'s performance prong. In its memorandum of decision, the habeas court did not analyze why the petitioner's trial counsel failed to argue that his sentence should be mitigated by relating that entreaty to the petitioner's lengthy history of hallucinations and mental health diagnoses of attention deficit disorder, schizophrenia, psychotic disorder, and post-

traumatic stress disorder for which he had been pre-
scribed medication. There may be strategic or other
reasons why the petitioner's trial counsel did not inves-
tigate and argue that some of the petitioner's mental
health history that had caused other criminal acts miti-
gated his sentence for the underlying crimes, including
the murder of the victim. The record before us, how-
ever, is not clear because the habeas court did not
make any factual findings concerning trial counsel's
performance.

The respondent urges this court that if we conclude
that trial counsel's failure to present the petitioner's
mental health records at sentencing was prejudicial, we
"should remand to the habeas court to make factual
findings as to the reasonableness of counsel's perfor-
mance." Quoting *Small* v. *Commissioner of Correction*,
286 Conn. 707, 716, 946 A.2d 1203, cert. denied sub nom.
*Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed.
2d 336 (2008), the respondent states that "[w]hen the
record on appeal is devoid of factual findings by the
habeas court as to the performance of counsel, it is
improper for an appellate court to make its own factual
findings." We agree with this contention.

In *Small*, our Supreme Court determined that, because
the habeas court made no factual findings with respect
to the performance prong of *Strickland* and because it
is improper for an appellate court to make its own
factual findings when the record is devoid of factual
findings by the habeas court as to the performance of
counsel, it was limited to reviewing the prejudice prong
for which there was an adequate record. Id., 716–17. In
the present case, we have no findings of fact from the
habeas court regarding trial counsel's performance, and
we agree with the respondent that, as members of an
appellate tribunal, we cannot make factual findings for
the first time on appeal. Accordingly, in the interests
of justice, we remand the matter to the habeas court
for the purpose of making factual findings regarding
the effectiveness of trial counsel's performance at sen-
tencing as it relates to *Strickland*'s first prong in light
of the evidence introduced at the habeas trial.

The case is remanded to the habeas court for the
making of underlying factual findings from the record
and based on those findings for a determination of
whether the petitioner has shown that his counsel's
representation of him at sentencing constituted consti-
tutionally deficient performance under the first prong of
*Strickland* in accordance with this opinion. This court
retains jurisdiction over the appeal, pending the remand
and subsequent appellate proceedings.

In this opinion, CLARK, J., concurred.

[1] The petitioner also argues that the habeas court improperly denied his
claim that his trial counsel rendered ineffective assistance by failing to cross-
examine and challenge testimony of a certain state's witness adequately.
We leave this claim to another day in light of our remand order.

[2] Practice Book § 43-3 (a) provides in relevant part: "If the defendant is

convicted of a crime other than a capital felony, the punishment for which may include imprisonment for more than one year, the judicial authority shall order a presentence investigation, or the supplementation of any existing presentence investigation report. . . .” See also General Statutes § 54-91a.

“The primary value of a [presentence investigation report] stems from the information contained therein, not from the report itself. Most of this information can be brought to the trial court’s attention by either party by means other than a [presentence investigation report].” (Footnote omitted.) *State* v. *Patterson*, 236 Conn. 561, 574–75, 674 A.2d 416 (1996).

[3] By order of the habeas court, the petitioner’s mental health records were sealed and only available to the parties. In order properly to review the claim raised by the petitioner on appeal, we ordered the mental health records unsealed and inspected them. Because the petitioner has raised the issue of the failure of his trial counsel to bring his mental health records adequately to the attention of the sentencing court and his failure to urge the sentencing court to consider such evidence in mitigation of the petitioner’s sentence, we necessarily refer to them in this opinion.

[4] We note that in the recently decided case of *Cruz* v. *Commissioner of Correction*, 206 Conn. App. 17, 34–36, 257 A.3d 399, cert. denied, 340 Conn. 913, 265 A.3d 926 (2021), this court determined that the habeas court properly concluded that the petitioner was not prejudiced by the failure of the sentencing counsel to present additional mitigating evidence concerning his mental health. *Cruz* is inapposite to the petitioner’s case. In *Cruz*, the petitioner had pleaded guilty pursuant to a plea agreement between the state and the petitioner. Id., 20. In exchange for his plea of guilty, the court informed the petitioner that it would sentence him to between twenty-five and forty-two years of incarceration with the opportunity to argue for less than the maximum of forty-two years. Id. He was sentenced to thirty-eight years of incarceration. Id. The issue decided in *Cruz* was that the petitioner could not prove that his defense was prejudiced because he could not show that he would have rejected the plea bargain in the face of overwhelming evidence that he would not have gone to trial for the crime of murder. Id., 23. The habeas court reasoned that Cruz, on the advice of new counsel, had abandoned his idea to withdraw his guilty plea and proceed to trial. Id.

The present case is factually different. In the present case, the petitioner did not plead guilty, nor did he have a plea agreement. Instead, he went to trial. When guilty pleas are the subject of a habeas petition, *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), modified the prejudice prong of *Strickland* by requiring a showing that had it not been for counsel’s ineffective assistance, he would not have pleaded guilty and gone to trial. The modification of the prejudice prong in *Hill* does not apply in the present case as it did in *Cruz*. Additionally, unlike in *Cruz*, in the present case, the additional mental health history of the petitioner that was not brought to the attention of the sentencing court revealed significant additional information that was not merely cumulative of the information contained in the presentence investigation report and that additional information related to matters that had a reasonable probability of lessening the petitioner’s total effective sentence.